BRAZOS RIVER CONSERVATION AND RECLAMATION DISTRICT
v. C. E. ALLEN ET AL.

No. 8069. Decided May 26, 1943.
(171 S. W., 2d Series, 842.)

*T. T. Bouldin,* of Mineral Wells, and *Samuels, Foster, Brown & McGee,* of Fort Worth, for petitioner.

The Court of Civil Appeals erred in holding that because a prior suit for condemnation for an easement on a part of the same land was pending in the district court, plaintiff was preclued from instituting a new proceeding in eminent domain, when the new proceeding evolved a greater quantity of land and an estate in fee simple. Grayson County v. Harrell 202 S. W. 160; City of Wink v. Wink Gas Co., 115 S. W. (2d) 973; Stone v. City of Wylie, 34 S. W. (2d) 842.

*J. R. Creighton* and *Ritchie & Ritchie,* all of Mineral Wells, for Respondents.

The holding of the Court of Civil Appeals did not preclude a second condemnation proceeding to acquire additional lands or an estate in those lands as might be necessary for carrying out the purposes of the condemnor. State v. Cloudt, 84 S. W. 415; Lamar County v. Talley, 94 S. W. 1069; Cochran v. Fischer, 61 S. W. (2d) 577.

MR. JUDGE SMEDLEY, of the Commission of Appeals, delivered the opinion for the Court.

This is a suit for injunction filed in the county court of Palo Pinto County by respondents Allen and Ritchie, land owners, to

enjoin petitioner Brazos River Conservation and Reclamation District from prosecuting a second proceeding for condemnation, filed by it and pending before special commissioners appointed by the county judge, until final disposition of a pending prior condemnation suit filed by the District, affecting the same land or in part the same land. On appeal by respondents from an order of the county court refusing a temporary injunction, the Court of Civil Appeals reversed the trial court's judgment and directed it to issue injunction, as prayed for, effective until final judgment in the first condemnation suit. 166 S. W. (2d) 386.

Brazos River Conservation and Reclamation District, which will be referred to as the District, was incorporated by an act of the Legislature in 1929, for the purpose, among others, of storing, controlling and conserving storm, flood and unappropriated waters of the Brazos River, and was given the power of eminent domain to acquire by condemnation any real or personal property, or any interest therein, within or without the boundaries of the District, necessary or convenient to the exercise of the powers, rights and privileges conferred upon it, in the manner provided by general law with respect to condemnation. Special Laws Second Called Session, 41st Legislature, Ch. 13, p. 22, Vernon's Annotated Civil Statutes, Vol. 21, pp. 536, 545.

On March 25, 1940, when the District was constructing and about to complete across the Brazos River a dam known as Possum Kingdom Dam, it filed with the county judge at Palo Pinto County its petition for the purpose of condemning the fee simple title to 1055 acres of land owned by respondents Allen and Ritchie, of which 642 acres would be inundated by the water impounded by the dam. The remaining 413 acres were above and beyond the margin of the reservoir and would not be covered by the impounded water when at spillway level, which was 1000 feet above sea level.

At the hearing before the special commissioners appointed to assess the damages to be paid the land owners, and after evidence had been offered as to oil and gas wells near Possum Kingdom Reservoir and as to the extent and value of oil and gas deposits in the margin of the reservoir, counsel for the District proposed to Allen and Ritchie, the land owners, that the District would, with their consent, agree to confine its efforts to condemn their property to an easement only and affecting only the land below the 1000 foot contour line or level of the

lake. Formal agreement was made that the commissioners in their findings should 'deem these proceedings as an application merely for an easement of the lands up to the 1000 foot contour," that the final decree should include the easement and that the land owners would waive overflow damages to the remainder of the land. Thereupon, by agreement, the petition for condemnation was changed so as to seek condemnation only of an easement and only of the land below the 1000 foot contour line, that is, the 642 acres. Following the agreement and the change of the petition, the hearing proceeded for the assessment of damages for the property and interest sought to be taken, that is, an easement affecting the 642 acres; and the commissioners, on May 24, 1940, made their award, finding that Allen and Ritchie were entitled to $21,580.00 as the value of the easement in and on the 642 acres.

The District, being dissatisfied with the award made by the commissioners, filed its objections thereto on May 29, 1940; and in order that it might take possession of the property pending the disposition of the litigation in the county court, the District, on June 3, 1940, deposited $21,580.00 with the clerk of the court. Article 3268, Revised Civil Statutes of 1925.

Thereafter, the openings in the dam were closed and the water in the reservoir, about May 10, 1941, reached the 1000 foot contour line, covering all of the 642 acres sought to be condemned. The record does not show when the dam was fully completed or when the openings in it were closed. It is disclosed by the record in cause No. 8068, this day decided by this court, (this volume, page 217) that on October 12, 1940, there was no water actually impounded on Allen and Ritchie's land by the dam. It clearly appears, however, from the records in the two cases and in other recent cases arising out of the construction of the dam and the reservoir, that on and for some time prior to that date, October 12, 1940, the dam had been practically completed and that little remained to be done, except closing the gates or openings in the dam and awaiting the accumulation of water, to complete the actual possession of respondents' land by inundation.

On October 23, 1940, the District filed in the county court of Palo Pinto County a motion to dismiss the condemnation suit which, after the filing of its objection to the commissioners' award, had been docketed in that court as cause No. 2526. In the motion the District stated that "it will no longer prosecute said cause" and requested the court to note a dismissal on the

docket. At the same time the District requested the court to make an order releasing the funds that it had deposited with the clerk. The court on the same day made an order overruling the motion to dismiss. That suit, cause No. 2526, has never been tried and is still pending in the county court, and the money deposited by the District remains on deposit as a special fund in the County Depository.

On Novemper 24, 1941, the District filed with the county judge its second petition for the condemnation of respondents' land. This petition is substantially the same as the first petition when originally filed. It seeks to condemn the same 1055 acres, including the 642 acres below the 1000 foot contour line and the 413 acres above that line, and the interest sought to be condemned is the entire fee simple interest in the land, not merely an easement.

The county judge appointed commissioners, who set the petition for hearing, in cause No. 2579, on January 5, 1942. The purpose of the instant suit and the effect of the judgment of the Court of Civil Appeals herein is to restrain the District from prosecuting the second condemnation proceeding and from requesting the commissioners to proceed with a hearing therein, until final disposition is made of the first condemnation suit.

The application for writ of error filed by the District presents, first, the contention that the District should not be precluded by the institution and pendency of the prior suit, in which a lesser quantity of land and merely an easement was sought to be condemned, from instituting a new proceeding for the purpose of acquiring a greater quantity of land and an estate in fee simple. The argument is made that the decision of the Court of Civil Appeals, if upheld, "would lay down a hard and fast rule under which a district such as this, having committed an error of judgment in a first proceeding for condemnation, should be absolutely denied the privilege of correcting its error by dismissing the first proceeding and instituting another in its stead."

Most, if not all, of the principles invoked by petitioner to sustain its position are sound and well supported by authorities, but they do not answer the very question presented herein. The question is not whether the District may maintain a proceding for the condemnation of additional land and of another interest in the land involved in the first suit. The question is, as stated in the opinion of the Court of Civil Appeals herein, written by Associate Justice Funderburk:

"When an agency of government having the power of eminent domain to the extent (it is assumed without deciding) of appropriating the fee simple estate in lands has proceeded according to law to condemn an easement only in certain lands and from an unsatisfactory award of damages has appealed to the County Court and in advance of a trial in County Court has appropriated the land to the purposes of its condemnation by depositing the amount of the award, has it the lawful power or right to ignore the pending action in the County Court by instituting and prosecuting a new proceeding to condemn the same land and interest by inclusion thereof in a larger tract which it seeks to appropriate to the extent of a fee simple estate therein?"

■ It is apparent from the record that the purpose of the District, in filing its motion to dismiss the first suit and seeking to withdraw the deposit which it made therein and in instituting the second proceeding for condemnation of the same land as that involved in the first suit, together with a greater interest in that land and together with additional land, was to rid itself of the first suit, and of the obligations that might arise therefrom and to prosecute a new proceeding as if the first suit had never been filed. A condemnor has the right to correct its errors, to dismiss its proceeding for condemnation, to abandon the purpose of taking the land, but it may not exercise any of these rights to the prejudice of the land owner.

■ In our opinion, the District proceeded so far with the first condemnation suit that it would manifestly be unjust and would certainly be prejudicial to respondents to permit it, against their consent, to dismiss or abandon the suit. The District acquired the right to take possession of the land prior to final determination of the amount of damages to be paid only by depositing in court the amount awarded by the commissioners, as required by Article 3268 of the Revised Civil Statutes of 1925. That deposit was for the benefit of the land owners, to assure them that they would be paid for the land that the District was taking from them. The opinion of the Court of Civil Appeals asks the pertinent question, what would become of the $21,580.00 deposit if the District were permitted to dismiss the first suit? The deposit was made in that suit and for disposition therein. The District has not consented to its payment to the land owners. It has asserted the right to withdraw it. There is nothing in the statute authorizing the clerk of the court or the court to retain the fund after dismissal of the suit. If the suit were dismissed and the deposit returned to the District, it

would have acquired possession of respondents' land without first having paid for it, leaving the land owners without security or payment. The District, already having possession of the land, could then prosecute to conclusion the second condemnation proceeding, without first making payment to the land owners and without making a deposit, thereby circumventing the requirement of Article 3268 that payment be made to the land owner or deposit made in court if possession is taken pending the litigation, and thereby remitting the land owners to the difficulty and uncertainty of making collection from a public agency.

It is true that it does not affirmatively appear from the record that respondents' land had actually been submerged by the waters of the reservoir when the District, on October 23, 1940, sought to dismiss the first suit and withdraw the deposit, but, as has been said, the dam at the time was practically completed and little, if anything, remained to be done except closing the gates or openings in the dam and awaiting the accumulation of water to complete the actual taking of the land by inundation. Because of the practical completion of the dam, its magnitude, the purpose of the project and the location of respondents' land, the inundation of the land was at that time inevitable and imminent and the taking, to all intents and purposes, had been accomplished. U. S. v. Yazoo & M. V. R. Co., (U. S. Dist. La.) 4 Fed. Sup. 366; Hurley v. Kincaid, 285 U. S. 95, 76 L. Ed. 637; U. S. v. Cress, 243 U. S. 316, 328, 61 L. Ed. 746, 753. The land had actually been flooded by the waters of the reservoir long before the institution of the second proceeding for condemnation, cause No. 2579.

■ In seeking to dismiss the first condemnation suit and withdraw the deposit in October, 1940, the District was not undertaking to abandon the purpose of taking the property. The dam and reservoir were so nearly completed that the District was compelled to acquire the land that would be submerged by the waters of the reservoir. It was not in a position to surrender the right to take possession, the virtual possession, that it had acquired by invoking the jurisdiction of the court and making the deposit and it neither offered nor intended to surrender it. In these circumstances and at that stage of the proceeding, it was the right of the land owners, as certainly as if they had filed a cross action for affirmative relief, to insist upon the trial and completion of the first condemnation suit, including the final adjudication of the amount of their damages and the application of the deposit to the payment of the damages.

We do not discuss the authorities relating to the right to abandon a condemnation proceeding, that is, to abandon the project or the purpose of taking the property, for here there is no intention to abandon the proceeding in that sense. The purpose is to dismiss the first suit and to take the same property and other property in a second proceeding. It may be observed, however, that the right to abandon the project or to abandon the purpose of taking the property may be lost by taking possession of the property. Kansas City M. & O. Ry. Co. v. Kirby, 150 S. W. 228, (application for writ of error refused); Leonard v. Small, 28 S. W. (2d) 826, (application for writ of error refused); Nevada & M. R. Co. v. De Lissa, 130 Mo. 125, 15 S. W. 366; Guaranty Loan & Trust Co. v. Helena Improvement District, 148 Ark. 56, 228 S. W. 1045; U. S. Fidelity & Guaranty Co. v. City of Ashville, (U. S. C. C. A.) 85 Fed. (2d) 966; Note 121 A. L. R., pp. 12, 72-76.

██ The effect of the injunction directed to be issued herein by the Court of Civil Appeals is merely to deny to the District the right to dismiss or abandon the first condemnation suit, because it had, in virtue of that suit and the deposit made therein, acquired the right to take possession of the land and has actually exercised that right. The injunction does not interfere with the further accomplishment of the project. A governmental agency or public service corporation that has the power of eminent domain and that already owns an interest in property sought to be condemned may, notwithstanding the ownership of such interest, acquire by condemnation the fee title in the same land when necessity exists for the taking of the fee title. Houston North Shore Ry. Co. v. Tyrrell, 128 Texas 248, 98 S. W. (2d) 786; New York & Harlem Ry. Co. v. Kip, 46 N. Y. 546, 7 Am. Rep. 385; 29 C. J. S. p. 1190, Sec. 229. The acquisition by the District of the easement in the 642 acres in the first suit will not be a bar to a second proceeding for the taking of a greater interst in that land and the taking of the additional 413 acres, provided the greater interest and the additional land are "necessary or convenient to the exercise of the powers, rights, privileges and functions conferred upon the District" by the act of the Legislature which created it, and provided further (and as to this we express no opinion) the District is not estopped by the agreement made in the first proceeding from prosecuting a second proceeding.

The District cites and quotes the text of Corpus Juris that "a former proceeding which has not been completed, and in which the damages assessed have not been paid, will not bar a

second proceeding to condemn the same land." 20 C. J. p. 926, Sec. 341. The same rule is set out in 29 Corpus Juris Secundum, p. 1211, Sec. 240. In none of the cases cited in support of the texts had possession been taken under the first proceeding.

By several assignments of error in the application for the writ the District makes the contention that injunction should not issue because the land owners have other remedies. It is argued that they should await the assessment of damages by the commissioners in the second proceeding and the filing of their decision with the county judge, appeal to the county court from that decision by filing objections with the county judge, and interpose in that court a plea in abatement because of the pendency of the first suit. It is also contended that a motion to dismiss the second proceeding would afford an adequate remedy. The Court of Civil Appeals held, correctly in our opinion, that the county court was authorized to issue the writ of injunction by Subdivision 2 of Article 4642 of the Revised Civil Statutes of 1925, which provides that judges of the district and county courts may grant writs of injunction "where a party does some act respecting the subject of pending litigation, or threatens or is about to do some act or is procuring the same to be done, in violation of the rights of the applicant when said act would tend to render judgment ineffectual."

■ It has been held that the subdivisions of Article 4642 are not to be construed as giving a statutory right to injunction where there is an adequate remedy at law. Hill v. Brown, (Com. App.) 237 S. W. 253; Powers v. Temple Trust Co., 124 Texas 440, 78 S. W . (2d) 951; New Amsterdam Casualty Co. v. Harrington, 298 S. W. 307. But these cases recognize the settled principle that the injured party is entitled to relief by injunction when there is not clear, full and adequate relief at law. See also Wicker v. Thomson, 242 S. W. 1106; Lakeside Irrigation Co. v. Kirby, 166 S. W. 715 (application for writ refused); Sumner v. Crawford, 91 Texas 129, 41 S. W. 994. In the case last cited the court quoted with approval from Watson v. Southerland, 5 Wall. 74, 18 L. Ed. 580, as follows:

"It is not enough that there is a remedy at law; it must be plain and adequate, or in other words, as practical and efficient to the ends of justice and its prompt administration, as the remedy in equity."

The injunction prayed for by respondents is to restrain the District from prosecuting the second condemnation proceeding now pending before the commissioners, until the final dispo-

sition of the first suit. The sole authority given to the commissioners by the statute (Articles 3264-3265) is to hear the evidence, assess the amount, of damages due the owner and file their decision with the county judge. They are not a court. They cannot pass upon plea in abatement or upon a motion to dismiss because of the pendency of the first suit, and they have no authority to require the condemnor to amend his petition. In the hearing before the commissioners in the second proceeding they would be obliged to hear evidence as to the value of the entire interest, the fee simple estate, in the 1055 acres, and to assess its value, without excluding the value of the interest in the 642 acres sought to be acquired in the first suit. It is shown by uncontradicted testimony that respondents would be put to very substantial expense in procuring and presenting evidence before the commissioners. In passing upon the application for injunction, as filed herein, the county court, without undue delay, determines the question whether the second proceeding for condemnation should await final judgment in the first suit, and by the use of this remedy, injunction, the delay, confusion, expense and probable futility of a hearing before the commissioners, followed by exception, appeal and the filing of plea in abatement in the county court, are avoided. In our opinion, appeal and plea in abatement or motion to dismiss would not afford a remedy as practical and efficient to the ends of justice and its prompt administration as that of injunction.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court May 26, 1943.