MEANEY v. NUECES COUNTY NAV. DIST. NO. I.

DUNN v. NUECES COUNTY NAV. DIST. NO. I.

Nos. 11919, 11920.

Court of Civil Appeals of Texas. San Antonio.

March 16, 1949.

Rehearing Denied April 13, 1949.

Savage & Young, Corpus Christi, Neel, King & Rachal, Corpus Christi, for appellant Meaney.

Wood & North, Corpus Christi, for appellant Dunn.

Kleberg, Eckhardt, Mobley, Lockett & Weil, Corpus Christi, for appellee.

NORVELL, Justice.

The controlling question presented by this appeal is whether or not the appellee, Nueces County Navigation District No. 1, is authorized to acquire the fee simple title to land (exclusive of minerals and all mineral rights), by condemnation proceedings. The County Court of Nueces County held for the district in two separate cases which have been appealed to this Court. The two appeals were submitted and argued together. Mary Dunn Meaney, appellant in Cause No. 11919, and Helen Dunn, appellant in Cause No. 11920, own adjoining tracts of land, which were condemned by the district.

Appellee's brief contains a statement of the case which we have examined and find correct. It is as follows:

"Appellee is a Navigation District being a governmental agency and body politic incorporated with governmental powers and existing under the laws of the State of Texas. Its boundaries extend to and include all of Nueces County. After an election on October 31, 1922, it was created under Article 3, Section 52 of the Constitution and the General Laws of the State of Texas, Vernon's Ann.St. On April 23, 1931, Appellee was duly converted to a Navigation District operating under Article 16, Section 59, of the Constitution of the State of Texas (Conservation and Reclamation) and the laws applicable thereto and so exists today.

"The port facilities of Appellee District consist of a main turning basin extending from the Bascule Bridge westward, and the presently existing industrial canal extending from the turning basin westward to Avery Point. These are both deep water projects and Appellee owns the fee of all lands within their bounds. In the original project which was the main turning basin, Appellee District owned the fee of the land and itself dredged and constructed the turning basin. It later conveyed to the United States an easement to dredge within the area, reserving unto itself all incidents of fee ownership and agreeing to hold harmless the United States in its operations in the basin. The industrial canal from the turning basin to Avery Point is likewise a deep water project under which Appellee District holds fee title to all lands within its bounds, having dredged the canal itself and later having conveyed to the United States an easement to dredge in the canal reserving unto Appellee District all other rights of fee ownership and contracting to hold harmless the United States in its operations just as in the original project.

"The case here on appeal arises out of a proposed further extension of Appellee's port facilities from Avery Point westward approximately three and one-half miles to the vicinity of Corn Products Refining Company Plant on the shores of Nueces Bay with a channel and additional turning basin. This will be a shallow water project proposed to a depth of twelve feet and is to be surrounded, as the rest of the harbor facilities are surrounded, by a continuous levee holding out the waters of Nueces Bay for the purpose of preventing silting of the channel from waters of the Nueces River which empties into Nueces Bay.

"In order to obtain sufficient dredged fill or spoil to construct the necessary levee, the channel will be dredged to eighteen feet. The construction of the entire project is at the cost of the Appellee District. In order to get the best bids obtainable, the War Department Corps of Engineers are assisting the Appellee by asking for bids and contracting the work. Funds in the sum of $308,000.00 have by Appellee been turned over to the War Department for payment to the private contractor who is successful in getting the construction contract. The channel and turning basin is entirely and solely a project of Appellee District.

"Appellee holds, by patent from the State of Texas, the fee of the surface (exclusive of minerals and all mineral rights) of submerged lands in Nueces Bay immediately adjoining and to the northward of the lands of Appellant landowners, Meaney and Dunn. A small, low, sandy spit or peninsula has built up at the mouth of a drainage ditch which drains through a narrow 43 foot opening in a railroad bridge into Nueces Bay on the lands of Appellant Dunn immediately west of and adjoining the lands of Appellant Meaney. The proposed channel is to be constructed on and over the submerged lands in Nueces Bay of which the Appellee District holds fee title, crossing the tip of this sandy spit which constitutes the land in question in this case and in which Appellee has condemned the fee of the surface (exclusive of minerals and all mineral rights).

"In order to protect its channel from silting from the drainage ditch, Appellee proposes to construct a settling basin between the mouth of the ditch and its channel. This will consist of a levee built immediately south of the channel's bulkhead line (a building line beyond which docks and other structures may not be built) for the purpose of spreading the flow from the ditch and causing a deposit of silt over a wide area to prevent another peninsula being built up. The levee will contain weirs to prevent the backing of water on the upland. Its construction was found necessary

to save the great cost of having to mobilize a dredge for the only purpose of removing one shoal instead of the regularly anticipated once per two year maintenance in a levee-protected channel. The entire expense of maintenance is to be at the cost of Appellee District."

The tracts of land involved are comparatively small, being one tract of 2.09 acres, owned by appellant Meaney, and two tracts of 0.064 and 440 square feet, respectively, owned by appellant Dunn. These tracts, being situated as they are upon a peninsula, are for the most part bounded by lands in which the appellee owns the fee, exclusive of minerals and mineral rights. Certain rights of way for roads were also involved in the condemnation proceedings but there are no issues concerning them raised upon this appeal. As appellants and appellee were unable to agree upon the title or interest that the district should take in the land, condemnation proceedings were instituted. Appellants objected to the commissioners' awards and the cases were then tried to a jury in the County Court. However, a stipulation was made relating to the amount of damages which provided that appellants Mary Dunn Meaney and Helen Dunn should receive $6,201.12 and $1,721.-82 each, respectively, in the event the lands were condemned. The only issue submitted to the jury was an inquiry as to whether or not the action of the district in seeking to condemn the fee (exclusive of minerals and mineral rights) rather than a perpetual easement, was "arbitrary, unreasonable and a clear abuse of discretion." Under the stipulation made by the parties, the damages would be the same, regardless of the estate or interest acquired by the district, be it the fee title (exclusive of minerals and all mineral rights) or a perpetual easement.

Insofar as we were able to ascertain upon the argument of this case, the practical difference in appellants' opinion as to their rights under the judgment of the County Court and a grant of a perpetual easement only, would relate to their right of ingress and egress to the bay, or later to the channel after construction had been completed.

It would seem that the principal question presented by this appeal, that is, the authority of the district to condemn a fee title, has been settled by the case of National Association of Audubon Societies v. Arroyo Colorado Nav. Dist., Tex.Civ.App., 110 S. W.2d 150, 152, in which this Court, speaking through Mr. Justice Slatton, said:

"By Article 8263, § 34, of the Revised Civil Statutes of Texas (Vernon's Ann. Civ.St. Art. 8263h, § 34) the right of eminent domain is conferred upon all navigation districts. In such article the Legislature has delegated the authority to navigation districts to determine for themselves the necessity for the taking, *and has lodged in such districts the discretion to determine what estate or interest in the required property shall be condemned.* This authority is only limited by the statute itself, and, unless this discretion is palpably abused by the district, the courts will not intervene. Pecos & N. T. Ry. Co. v. Malone, Tex.Civ.App., 190 S.W. 809; McInnis v. Brown County Water Imp. Dist., Tex.Civ.App., 41 S.W.2d 741.

"*Under the statute the discretion was lodged with the district to determine for itself whether it was necessary to obtain a fee-simple title to the right of way sought to be condemned or an easement over and through the leasehold estate held by the appellant.*" (Italics supplied.)

Appellants vigorously urge that the expression relating to the right of a navigation district to condemn a fee-simple title to land was not necessary to the decision of the case, and thus, being dicta, is not binding upon this Court in arriving at a decision of the principal point presented in this case.

The authority relied upon by the district to support the condemnation of the property here involved is Article 16, § 59 of the Constitution of Texas (the Conservation and Reclamation Amendment), and Article 8263h, Vernon's Ann.Civ.Stats., particularly §§ 34, 35 and 50 thereof.

Sections 34 and 35, and the pertinent part of Section 50, of Article 8263h read as follows, to-wit:

"Sec. 34. The right of eminent domain is hereby conferred upon all navigation dis-

tricts established under the provisions of this chapter for the purpose of condemning and acquiring the right of way over and through any and all lands, private or public, except property used for cemetery purposes, necessary for the improvement of any river, bay, creek, or stream, and the construction and maintenance of any canal or waterway, and for any and all purposes authorized by this Act. All such condemnation proceedings shall be instituted under the direction of the navigation and canal commissioners, and in the name of the navigation district, and the assessing of damages shall be in conformity to the statutes of the State of Texas for condemning and acquiring the right of way by Railroads; provided, that no appeal from the finding and assessment of damage by the commissioners appointed for that purpose shall have the effect of causing a suspension of work by the navigation commissioners in prosecuting the work of improvement in all of its details; provided, that no right of way can be condemned through any part of an incorporated city or town without the consent of the lawful authorities of such city or town.

"Sec. 35. The navigation and canal commissioners of any district are hereby empowered to acquire the necessary right of way and property of any kind for all necessary improvements contemplated by this Act by gift, grant, purchase or condemnation proceedings. * * *

"Sec. 50. All navigation districts organized under Article XVI, Section 59, of the Constitution of Texas, whether created by Act of the Legislature or organized under General Law, shall have the right, power and authority to acquire by gift, purchase or condemnation proceedings and to own lands adjacent or accessible to the navigable waters and ports developed by them, that may be necessary or required for any and all purposes incident to or necessary for the development and operation of said navigable waters or ports within said districts * * *."

■ Said section No. 50 is a part of Chapter 125, p. 218, of the Acts of the Fiftieth Legislature (1947). This Act contains a provision that if "any paragraph, clause,

or provision of this Act shall be held unconstitutional, the remainder hereof shall not be affected thereby but shall remain in full force and effect." In view of this clause, we are clearly of the opinion that the quoted portion of this section is constitutional and obviously we need not determine whether other provisions of the Act are valid or invalid.

In the Audubon Societies case, decided before the adoption of Section 50, it was contended that the State of Texas was a necessary party to the condemnation proceedings, as it was the owner of the fee title to the lands involved, and the National Association of Audubon Societies held only a fifty-year surface lease thereon. The strict question presented was whether or not the navigation district under the provisions of Sections 34 and 35 of Article 8263h was authorized to condemn an easement—something less than the fee. This Court held that it was.

■ It is perhaps possible that in construing Sections 34 and 35 of Article 8263h, three meanings might be considered: first, that only the power to condemn the fee was delegated to the district by the Legislature; second, that only the power to condemn an easement was delegated; and third, the power to condemn either the fee or an easement was delegated. The proper interpretation of these statutory provisions was considered by this Court in the Audubon Societies case and the third possible construction was adopted. While it may have been unnecessary to go further than to say that under the applicable statutes an easement may be condemned, we are convinced that the construction placed upon the statute in the Audubon Societies case was correct and is supported by the plain wording of the statute itself. The district is given the power to acquire by condemnation "property of any kind for all necessary improvements." Sec. 35. This language imports an absolute title when that type or kind of an estate or interest is necessary. When an easement will serve the necessary purpose, the statute supports the power to condemn an easement.

In this view, we are supported by Brazos River Conservation and Reclamation Dis-

trict v. Costello, 135 Tex. 307, 143 S.W.2d 577, 130 A.L.R. 1220, and Brazos River Conservation and Reclamation District v. Allen, 141 Tex. 208, 171 S.W.2d 842.

It is settled that the Brazos district which is an Article 16, § 59, district, like the appellee here, is empowered to condemn the fee title to land. The statutory provision applicable to the powers of condemnation which may be exercised by the Brazos District do not contain the words "fee" or "fee simple." The statute provides that the district may acquire "by condemnation any and all property of any kind, real, personal or mixed, or any interest therein, within or without the boundaries of the District * * * necessary or convenient to the exercise of the powers, rights, privileges and functions conferred upon it by this Act * * *." Acts 1929, 41st Leg., 2d C. S. Special Laws, p. 22, ch. 13; Acts 1935, 44th Leg., 1st C. S., p. 1527, c. 368, § 13a. See Vernon's Ann.Civ.Stats., Vol. 21, p. 536, following Article 8197f, wherein the Act creating the Brazos River Conservation and Reclamation District is set out.

Appellants emphasize the words "or any interest therein" as distinguishing the Brazos District act from the statute relating to navigation districts (Article 8263h, § 35) which simply provides that the commissioners of the district are "empowered to acquire * * * property of any kind for all necessary improvements * * *."

In effect, it is urged that "property of any kind" means an easement, while "property of any kind, real, personal or mixed, or any interest therein" means either the fee title or an easement—that while the phrase "property of any kind" does not mean a fee title, it can be enlarged to include a fee title by adding thereto the words, "or any interest therein." We are unable to agree with this construction when applied to the powers of eminent domain delegated to an Article 16, § 59, district, especially when the statutory authority delegated is limited to the condemning of property "for all necessary improvements" or for acquiring property "necessary or convenient to the exercise of the powers, rights, privileges and functions" conferred on the district by law. It seems more reasonable to regard the phrase "or any interest therein" as making it clear and explicit

that the district possesses the power to condemn less than a fee title, when the lesser interest will adequately serve the purposes and needs of the district.

We are not unmindful of the provisions of Article 3270, Vernon's Ann.Civ.Stats., which is a part of the statutory provisions relating to the subject of Eminent Domain (Title 52). This article provides that "except where otherwise expressly provided by law, the right secured [under the power of eminent domain] shall not be so construed as to include the fee simple estate in lands."

■ As stated in Texas Jurisprudence, "this enactment is but an enunciation of the general rule, obtaining even in the absence of statute, that the condemnation of property for a public use divests its owner of no right further than is necessary for the purpose for which the condemnation was authorized." 16 Tex.Jur. 679.

As we construe Sections Nos. 34, 35 and 50 of Article 8263h, the Legislature has expressly provided for the condemnation of a fee title for all necessary improvements contemplated by the Act of which these sections are a part.

In arriving at this conclusion, we are authorized and enjoined to consider the constitutional provisions authorizing the creation of the district in its present form. Article 16, § 59, of the Constitution authorizes the Legislature to create conservation and reclamation districts possessed of broad and sweeping powers,—"such powers of government and with the authority to exercise such rights, privileges and functions * * * as may be conferred by law."

In Brazos River Conservation & Reclamation District v. Costello, 135 Tex. 307, 143 S.W.2d 577, 578, 130 A.L.R. 1220, it was said that: "The history of the many laws enacted by the legislature of this State relating to the exercise of the right of eminent domain clearly shows that it is the policy of the legislature to liberalize the exercise of that power, rather than to restrict it."

■ It is our duty to ascertain the intent of the Legislature from the language used by it and give effect thereto. It is not necessary that the term, "fee simple," or other particular and precise words be used

to authorize the taking of a fee simple title. "There are no sacramental words which must be used in a statutory power to take and hold lands in order to give a right to take the lands in fee. Any language in the statute which makes its meaning clear is sufficient * * *." Mr. Justice Holmes in City of Newton v. Perry, 163 Mass. 319, 39 N.E. 1032.

We hold that the appellee district is authorized under law to acquire fee simple title to lands for all necessary improvements contemplated by the Act. Appellants' first point is overruled.

We consider that the resolutions of the Commissioners of the appellee district sufficiently indicate a decision by the Board to authorize proceedings on the part of the district to acquire the fee simple title (exclusive of minerals and all mineral rights) to the real property involved in this suit. If there be any uncertainty as to the meaning of these resolutions and it be necessary to consider the circumstances surrounding their adoption, then it is abundantly clear that the district commissioners sought to condemn a fee title. They had attempted to secure such title or an exclusive easement by negotiation and appellants steadfastly refused to grant either to the district, but insisted upon retaining rights which would allow them access to the bay or the channel. This refusal and insistence resulted in the filing of condemnation proceedings. Appellants' second point is overruled.

■ Appellants' remaining points relate to the court's rulings in excluding evidence, the charge of the court and an alleged unauthorized communication between the trial judge and the jury. We need not discuss these contentions in detail for the reason that the evidence raised no jury issue. The trial court should have rendered judgment for the district as a matter of law. While we are inclined to the belief that the trial judge was correct in his ruling excluding certain testimony (which ruling is made the basis of one of appellants' points), this matter is immaterial, for if the testimony had been admitted no jury question would have been raised.

■ Having held that the district had the statutory authority to condemn the fee title to land (exclusive of minerals and all mineral interests), the only remaining question relates to the necessity for taking the fee rather than a mere easement. The determination of this question is one primarily for the decision of the commissioners of the district. Crary v. Port Arthur Channel & Dock Co., 92 Tex. 275, 47 S.W. 967; National Ass'n of Audubon Societies v. Arroyo Colorado Nav. Dist., Tex.Civ.App., 110 S.W.2d 150. In the absence of a showing that the action was induced by fraud or was wholly arbitrary and founded upon no adequate determining principle, the decision of the board is final. Housing Authority of City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 130 A.L.R. 1053.

Appellants used two witnesses, Dan Meaney, the husband of one of the appellants, and H. L. Sisson, the resident engineer with the corps of engineers stationed at Corpus Christi. Meaney was of the opinion that an easement would be sufficient for the district's purposes. Sisson stated, for the purpose of a bill of exceptions, that he knew of waterway projects where an easement only had been secured by the particular navigation district involved. He also made the following statement with reference to the Nueces District: "I am not familiar with actually all their requirements nor with legal terminology, but if they can get to and occupy it to dredge and maintain it that would be sufficient; that would be all anyone needed."

■■ This testimony shows at the most that Meaney's and probably Sisson's ideas of how the district should be operated differed from that of the commissioners, who, under the law, are charged with that responsibility. If this type of testimony could raise a jury question, then in practically any case a jury could be called upon to decide an issue of "abuse of discretion," between duly constituted public officials and those who disagreed with them as to proposed official action. The question of "abuse of discretion" is generally a question of law. Mere differences of opinion do not raise fact issues for a jury in cases of this character. As above pointed out, the navigation district now owns its real properties in fee

(excluding minerals and all mineral rights). The State of Texas, under special legislative enactment, has granted to the district the fee title to lands. The district must contract and negotiate with the Federal Government and various branches thereof. It must be in a position to meet governmental requirements and regulations that are now in effect or which may be hereinafter promulgated. Under the circumstances disclosed by the record, it can be said as a matter of law that the decision of the commissioners to acquire a fee title was a reasonable exercise of the discretion vested in them by law, and not the result of capricious or arbitrary action.

None of appellants' points discloses a reversible error and the judgments appealed from are affirmed.