**DAVIS et al. v. GILLEN et al.**

No. 4658.

Court of Civil Appeals of Texas. Beaumont.

Nov. 3, 1949.

F. K. Dougharty, Liberty, for appellants.

Bill Daniel, Liberty, for appellees.

WALKER, Justice.

Appeal from a temporary injunction restraining defendants from felling and removing timber.

Appellees, referred to hereinafter as plaintiffs, sued appellants, referred to hereinafter as defendants, in trespass to try title to recover the title to and possession of a 200 acre tract of land in the James Haney Survey in Liberty County. In addition to a general allegation of title in fee simple, plaintiffs specially plead title under the five, ten, and twenty-five year statutes of adverse possession. Vernon's Ann.Civ.St. arts. 5509, 5510, 5519. Plaintiffs alleged ouster by defendants on September 7, 1949, to plaintiffs' damage in the sum of $3,000. Plaintiffs alleged further that since this date, defendants, by and through the defendant Ed Rice, had commenced and were continuing to fell timber upon the land sued for by plaintiffs and that unless restrained, the defendants, by this conduct and the consequent loss of timber by plaintiffs, would cause plaintiffs irreparable damage. Plaintiffs alleged in general terms that they had no adequate remedy at law; and in addition to their prayer for title to and possession of the land, they prayed that defendants be restrained pend-

**836**

ing the suit from cutting and removing timber from said land.

Defendants' pleadings are not in the transcript.

Plaintiff's prayer for a temporary injunction came on for hearing on September 9, 1949, and on the proof adduced by the parties, the trial court passed an order on this date restraining. "defendants, their agents, assigns, servants and employees from cutting and removing the remainder of the timber from (the land in suit) and from committing or permitting any further waste or spoil in, on, or to said premises, or any part thereof."

The order contained other provisions to which we need not now refer.

■ The proof, so far as relevant and construed most favorably to plaintiffs, as it must be under the order appealed from, is as follows:

(1) The land in suit bears merchantable timber; and on this record the ownership of this timber appears to be the matter basically at issue between the parties.

Plaintiffs ranged cattle on the land for many years, but no other use of the land was proved.

(2) Plaintiffs adduced proof that they had title to the land under the ten year statute of limitations. It does not appear that defendants ever had actual possession of the land, or that they ever exercised dominion over the land, prior to the acts of the defendant Rice which are related hereinafter. Defendants adduced no proof of title, although the testimony of Franklin, agent of some of the defendants, shows that the defendants other than Rice did claim title to a tract of land in the Haney Survey which included the land in suit; and in their brief defendants make this admission: "For the purposes of this appeal it will be admitted that plaintiffs made a prima facie showing of title to the land involved under the statutes of limitation."

(3) Although they had once been in actual, exclusive possession of the land, the proof does not show that plaintiffs were in actual possession of said land when defendant Rice committed the acts hereinafter mentioned. However, some of the plaintiffs resided upon a tract adjacent to said land, and prior to the filing of this suit plaintiffs, whether in actual possession or not, had continuously exercised dominion over said land by cutting wood and posts upon said land.

■ However, by virtue of their proof and defendants' admission that this proof showed title in plaintiffs, the plaintiffs are to be taken as having been in constructive possession of the land when defendant Rice first entered upon said land. The proof concerning Rice's conduct now to be related, also shows that Rice's acts only amounted to trespasses and did not amount to actual possession of the land in suit, for himself or for defendants, except of such parts of said land as he momentarily and temporarily occupied during the course of his operations in felling timber growing on said land and removing same to his mill.

(4) Defendant Rice operated a sawmill, and a few days before plaintiffs filed this suit, he entered upon the land in suit and began to fell and remove timber growing on said land, for manufacture into lumber at his mill. He claimed no interest whatever in the land, but made his entry under and by virtue of an oral agreement he had made with Franklin, the agent of the other defendants, about a year prior to this suit, which authorized him, until his codefendants ordered him to stop, to enter upon any of the lands owned by the Wirt Davis Estate in the James Haney Survey, and to fell and remove hardwood timber growing on said lands. By the term Wirt Davis Estate we refer collectively to all of the defendants other than the defendant Rice. As stated, Franklin testified that the Davis Estate claimed title to a tract in the Haney Survey which included the land in suit. Franklin described his agreement with defendant Rice as follows: "Our agreement was Mr. Rice should cut all hardwood on the Wirt Davis Estate lands on the James Haney Survey, timber to be paid for as cut and scaled, on the Doyle-Scribner Scale." Defendant Rice was to pay $8.00 per thousand feet for this timber. In their brief, the defendants other than Rice admit responsibility to plaintiffs for Rice's con-

duct and refer to him as their agent; but the testimony of Franklin and Rice shows Rice to have been an independent contractor.

It does not appear that defendant Rice did anything upon the land in suit except fell timber and remove it. It does not appear that he assumed to take possession of said land, or of any part of it, for his codefendants, or to exclude plaintiffs or any one else therefrom, or that he occupied any part of it except momentarily and temporarily as his operations required. Nor does it appear that his codefendants expected or desired him to do otherwise.

It is to be inferred that had defendants not been restrained, the defendant Rice would have continued, pending the suit, to fell and remove plaintiffs' timber and thus to convert the same to his use and that of his codefendants.

█ Under the circumstances recited, defendants, Rice included, are to be treated here as if they were mere trespassers.

(5) Plaintiffs made no effort to show that defendants were unable to pay such a judgment for damages as they might recover against defendants for the acts of Rice. There was proof from defendants indicating that those other than Rice could pay any judgment for damages which plaintiffs could have recovered against them; and while the trial court was not required to accept this proof as true, the burden of showing that defendants could not pay a judgment for damages rested upon the plaintiffs, if that matter was of any legal significance, and we may therefore assume, for the purposes of argument, that defendants were solvent and were able to pay whatever judgment for damages might be rendered against them.

Nor is there any proof that plaintiffs were unable to, or that they had attempted to, sequester the land.

(6) Plaintiffs acted promptly to stop Rice's conduct and to prevent the loss of their timber. Plaintiff Ira Gillen testified that he learned of Rice's trespass about a week before the date of the hearing in the trial court, that he communicated with Rice and instructed him to stop his operations on the land, and that he filed the suit on Rice's refusal to comply with his demand.

(7) We have read the order appealed from in the light of the proof before the trial court, and we construe that order as being consistent with the statements made above concerning the possession of the land. We note especially the first sentence of the paragraph of that order next to the last paragraph directing defendants to *enter upon* the land in suit, and to remove some logs on the land. This statement shows that the trial court did not regard the defendants as being in actual possession of the land.

## Opinion.

Defendants have filed two Points of Error for reversal, saying that the trial court erred in granting plaintiffs the temporary injunction appealed from, on the ground that plaintiffs were not entitled to injunctive relief if they had an adequate remedy at law, and that, on the record made in the trial court, they had two adequate legal remedies, first by way of a judgment against defendants for damages, and second, by way of sequestration.

Defendants' Points of Error are overruled. The defendants were engaged in destroying a valuable part of the subject matter of the controversy between plaintiffs and defendants, indeed, that part of the subject matter which seems to have provoked Rice's acts and caused this suit to be filed; and the restraint imposed on the defendants was authorized by Subdiv. 2 of Art. 4642, R.S.1925, as construed in Houston Oil Co. of Texas v. Village Mills Co., 109 Tex. 169, 202 S.W. 725, 226 S.W. 1075.

This decision, in contrast with defendants' argument that damages is an adequate remedy, gives legal significance to plaintiffs' wish to keep and not to sell or be deprived of their timber.

Sequestration would not be an adequate remedy for plaintiffs because it might cost the plaintiffs a dominion and a constructive possession they actually had, and an actual possession of land which they might have assumed at will. Under Rule 696 et

seq., Texas Rules of Civil Procedure, plaintiffs are the last in a line of three to whom the right of possession might pass by virtue of the issuance of a writ of sequestration. Possession is first to be taken by an officer of the court, and defendants next have the right to replevy. For an illustration, see: White v. Sparks, Tex.Civ.App., 118 S.W.2d 649; Id., 119 S.W.2d 114.

█ Defendants have made some point of plaintiffs' allegation of ouster; but this allegation is formal, required by the Rules whether true or not; and the availability or adequacy of sequestration will be tested by the proof and not by this allegation.

The order appealed from is affirmed.

## On Motion for Rehearing.

Defendants have filed a motion for rehearing. The grounds requiring discussion are indicated in the following comments:

█ (1) Determination of the title to, and of the right to the possession of the timber, growing on the 200 acres of land described in the petition was assuredly a material part of the subject matter of the suit. This is shown, not only by the petition but also by the proof concerning the matters which resulted in this suit being filed.

(2) A judgment in plaintiffs' behalf against defendants for the value of said timber would not be the same thing as, nor in any sense the equivalent of, a judgment for the title to and possession of said timber. These two judgments are inconsistent; and if defendants fell and remove the timber while the suit is pending, they will necessarily destroy a part of the subject matter of the litigation. Of the various decisions cited hereinafter, see particularly City of Dallas v. Wright, 120 Tex. 190, 36 S.W.2d 973, 77 A.L.R. 709, and Ex parte Lee & Still, 127 Tex. 256, 93 S.W.2d 720.

█ (3) The trial court, as we stated in the opinion now on file, was justified in assuming that the defendants would continue to fell and remove the timber unless they were stopped. The temporary injunction stopped this particular interference

with the jurisdiction of the trial court to determine issues pending before that court for decision and with plaintiffs' right to prosecute their remedy; and under the circumstances was authorized not only by the express terms of Subdiv. 2 of Art. 4642, R.S.1925, but also by the provisions of Art. 5, Sec. 8, of the Texas Constitution, Vernon's Ann.St., which empowered the trial court to issue writs of injunction and all writs necessary to protect the jursidiction of said court. To this extent, at least, it seems that Subdiv. 2 of Art. 4642 is but an expression in statutory form of a power already vested in the trial court under these provisions of the constitution. See: City of Dallas v. Wright, 120 Tex. 190, 36 S.W.2d 973.

(4) We adhere to our conclusion that the decision in Houston Oil Co. v. Village Mills Co., 109 Tex. 169, 202 S.W. 725, 226 S.W. 1075, is in point. The fundamental issue between the parties there was the same as that raised here, namely, the title to and the right to the possession of timber growing upon land, title to which is in litigation between the parties. In each case, the rights protected by the trial court were only prima facie rights and the injunctions were necessary because of similar reasons and had the same effect; Houston Oil had recovered a judgment for the title to and possession of the land in suit but this judgment was under review on appeal, and the defendants admitted here, without contradicting plaintiffs' proof, that plaintiffs proved title prima facie. In the case cited, the trial court issued the injunction while the cause was on appeal; but if that court had the power under Subdiv. 2 of Art. 4643, R.S.1911, which, with immaterial changes in wording, is now Subdiv. 2 of Art. 4642, R.S.1925, to protect the jurisdiction of the appellate court and the right of the Houston Oil Company to an adjudication of the issues pending for litigation, said trial court had the same power to protect its own jurisdiction in a like cause. In the case cited, the court considered the effect which loss of the timber would have upon the value of Houston Oil's judgment for that land if that judgment was affirmed but the timber was neverthe-

less cut and removed by the adverse party; and it is a reasonable inference that the same comment could be made here. However, we need not do so; for the title to and the right to the possession of the timber on the 200 acres now in suit is plainly in issue between the parties to this appeal.

(5) The relevant holdings made in Houston Oil Company v. Village Mills Company have not been qualified. On the contrary, similar holdings have been made by the court and by the Commission in the following cases: Halsell v. Ferguson, 109 Tex. 144, 202 S.W. 317; Lone Star Gas Co. v. Municipal Gas Co., 117 Tex. 331, 3 S.W.2d 790, 58 A.L.R. 797; City of Dallas v. Wright, 120 Tex. 190, 36 S.W.2d 973, 77 A.L.R. 709; Connally v. Continental Southland Savings & Loan Ass'n, 121 Tex. 565, 51 S.W.2d 293; Bennett v. Sun Oil Co., 126 Tex. 269, 84 S.W.2d 693; Ex parte Lee & Still, 127 Tex. 256, 93 S.W.2d 720; Southwestern Greyhound Lines, Inc., v. Railroad Commission of Texas, 128 Tex. 560, 99 S.W.2d 263, 109 A.L.R. 1235; Perry v. Stringfellow, 134 Tex. 328, 134 S.W. 2d 1031, affirming Tex.Civ.App., 113 S.W. 2d 1012; Brazos River Conservation & Reclamation District v. Allen, 141 Tex. 208, 171 S.W.2d 842; Yonack v. Emery, Tex.Com.App., 13 S.W.2d 667, 70 A.L.R. 684. The statements concerning the inadequacy of *damages* made in Sumner v. Crawford, 91 Tex.129, at page 132, 41 S.W. 994, and in Lakeside Irrigation Co. v. Kirby, Tex.Civ.App., 166 S.W. 715, cited in Brazos River Conservation & Reclamation District v. Allen, are also in accord.

Defendants apparently construe that decision, Houston Oil Co. v. Village Mills Co., as holding that a temporary injunction may issue under Subdiv. 2 of Art. 4642, R.S.1925, regardless of the existence of legal remedies; but the court actually made no such holding. Such a point was not before them for decision, any more than it is before us. True, the court did not mention any other legal remedy; but their language plainly shows that they thought a temporary injunction was necessary to protect the jurisdictoin of the appellate court and Houston Oil's right to the remedy invoked by it, and thus their

judgment has no necessary application to any case where a temporary injunction is *not* needed for such purposes. A case where a temporary injunction is not needed, either because an adequate legal remedy exists or because of some other reason, differs from that adjudicated in Houston Oil Co. v. Village Mills Co. We construe the opinion of this court in Harrison v. Barngrover, Tex.Civ.App., 72 S.W.2d 967, at page 970, as being in accord with our construction of Houston Oil Co. v. Village Mills Co. Texas Pacific Coal & Oil Co. v. Howard, Tex.Civ.App., 212 S.W. 735, did not "distinguish" Houston Oil Co. v. Village Mills Co.; the appeal was from an order *dissolving* an injunction and the facts were thought to be sufficient to sustain the exercise of discretion. According to defendants, such discretion does not exist. We note that in Culpepper v. West, Tex.Civ.App., 110 S.W.2d 231, a writ of error was granted but was not adjudicated on the merits because the issue had become moot. 135 Tex. 156, 140 S.W.2d 166. As regards the adequacy of Trespass to Try Title and sequestration, see Nagy v. Bennett, Tex.Civ.App., 24 S.W.2d 778, at page 780, and the opinion of the Court of Civil Appeals in Perry v. Stringfellow, 113 S.W. 1012, the judgment being affirmed at 134 Tex. 328, 134 S.W.2d 1031.

The decisions of the Commission of Appeals in Hill v. Brown, 237 S.W. 252, and in Powers v. Temple Trust Co., 124 Tex. 440, 78 S.W.2d 951, which defendants cite, do not qualify any relevant holding made in Houston Oil Co. v. Village Mills Co., and are not in point on any phase of the appeal before us.

In Hill v. Brown, a landlord sued a tenant who held over, for the possession of the premises in the tenant's possession, and pending determination of the suit, prayed for and obtained a mandatory injunction ousting the tenant and placing him in possession. The issue between the parties was thus limited to the right to possession, with rental value perhaps as an incidental issue; and the Commission held that on the record before them either forcible detainer or sequestration appeared to be an adequate remedy. Destruction of the

subject matter of the litigation and preservation of the trial court's jurisdiction were not in issue; indeed, the mandatory injunction reversed the status quo ante and accomplished precisely the reverse of the result accomplished by the temporary injunction now before us. The opinion does not refer to Houston Oil Co. v. Village Mills Co., or to Subdiv. 2 of Art. 4643, R.S.1911, now Art. 4642, nor to Art. 5, § 8, of the Texas Constitution. Instead, the Commission referred to other statutes, namely, Subdivisions 1 and 3 of Art. 4643, R.S.1911, which were not involved in Houston Oil Co. v. Village Mills Co.; and in connection with Subdivisions 1 and 3, the Commission discussed a dictum announced in the next to the last paragraph of the opinion in Sumner v. Crawford, 91 Tex. 129, 41 S.W. 994, which was repeated (again as a dictum) in Southwestern Tel. & Tel. Co. v. Smithdeal, 104 Tex. 258, 136 S.W. 1049. This dictum did not construe Subdiv. 2 of Art. 4643, R.S. 1911, now Art. 4642, nor Art. 5, § 8 of the constitution; instead, it construed only Subdivisions 1 and 3 of Art. 4643, R.S. 1911, and indicated that Subdivision 1 of Art. 4643, R.S. 1911, granted a statutory right to an injunction in cases falling within its terms, even though an adequate legal remedy existed. This dictum was overruled in Hill v. Brown; but this action of the Commission is of no significance here because the dictum, and the statutes on which the dictum rested, are not relevant to this appeal. The only portions of the opinion in Hill v. Brown which have any application to the present appeal are the statements that an injunction ought not to be issued if an adequate legal remedy exists; and these statements do not qualify the holding made in Houston Oil Co. v. Village Mills Co.

Powers v. Temple Trust Co., 124 Tex. 440, 78 S.W.2d 951, added nothing to Hill v. Brown which affects the appeal before us except a specific reference to Subdiv. 2 of Art. 4642, R.S.1925, formerly Subdiv. 2 of Art. 4643, R.S.1911, and a statement that in issuing injunctions under Subdiv. 2, the adequacy of existing legal remedies

must be kept in mind. Otherwise, the facts involved no point now before us. Powers had filed suit in one District Court to have certain promissory notes declared usurious, and said notes and a Deed of Trust securing same cancelled. He prayed, and obtained when the petition was filed, a temporary injunction restraining the Trust Company from transferring the notes and lien, and from foreclosing the lien under the power of sale or in court. This injunction, however, was not served upon the Trust Company at the time; and before it was served, the Trust Company sued Powers in another District Court praying judgment on the aforesaid promissory notes and a foreclosure of said lien. Powers then had a citation and the temporary injunction served upon the Trust Company, and the Trust Company then appeared in Powers' suit and moved the dissolution of Powers' temporary injunction on the ground that a plea in abatement to the Trust Company's suit would be an adequate remedy. The motion to dissolve was overruled; and on appeal, the Commission affirmed the order of the Court of Civil Appeals reversing the trial court's order and dissolving Powers' temporary injunction. The Commission, however, only discussed that consequence of Powers' injunction which restrained the prosecution of the Trust Company's suit against him; and here the Commission held that, on the record before them, a plea in abatement to Powers' suit appeared to be as adequate a remedy against the prosecution of that suit as the injunction restraining said suit. The Commission did not refer to the other phases of the injunction granted Powers, namely, restraint of transfer and of an exercise of the power of sale; but the conduct of the Trust Company shows that such restraint was not needed, and the opinion of the Court of Civil Appeals, at Temple Trust Co. v. Powers, 50 S.W.2d 362, supports this conclusion.

Thus it appears that destruction of the subject matter of litigation and the preservation of the trial court's jurisdiction were not involved in Powers v. Temple Trust Co.; and indeed, the Commission ex-

pressly declined to decide whether Powers' temporary injunction should have been *issued*.

■ (6) These comments bring us to a consideration of the matter of adequacy of legal remedies available to plaintiffs. And here it is first to be noted that in determining whether a legal remedy is adequate when contrasted with the temporary injunction prayed for, the doctrines of the former English courts are not strictly applied; and defendants' argument does not give this variance due weight. Thus, in Sumner v. Crawford, 91 Tex. 129, at page 132, 41 S.W. 994, at page 995, it was said: " 'It is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, *as practical and efficient to the ends of justice and its prompt administration* as the remedy in equity.' Watson v. Sutherland, 5 Wall. 74, 18 L.Ed. 580; North v. Peters, 138 U.S. 271, 11 S.Ct. 346, 34 L.Ed. 936. In courts administering both law and equity, like ours, the rules denying injunction when there is a remedy at law should not be applied as rigidly as at common law, where the issuance of the writ in equity was to a certain extent an invasion of the jurisdiction of another tribunal." The court reiterated this conclusion in Southwestern Tel. & Tel. Co. v. Smithdeal, 104 Tex. 258, at page 254, 136 S.W. 1049, in discussing the adequacy of damages; and the quotation from Sumner v. Crawford states the present rule of decision. See: Brazos River Conservation & Reclamation District v. Allen, 141 Tex. 208, 171 S.W.2d 842; Story v. Story, 142 Tex. 212, 176 S.W.2d 925. The Commissioners' opinions in Hill v. Brown and Powers v. Temple Trust Co., are in accord and their citation of Lakeside Irrigation Company v. Kirby, Tex.Civ. App., 166 S.W. 715, in their opinion in Brazos River Conservation & Reclamation District v. Allen indicates that their understanding of the meaning of *adequacy* accords with ours.

■ Necessarily, then, under the rule of decision quoted from Sumner v. Crawford and under the plain terms of Subdiv. 2 of Art. 4642, R.S.1925, and of Art.

5, Sec. 8, of the constitution, mentioned before, the adequacy of a legal remedy, when contrasted with a temporary injunction, must generally be tested by the circumstances of the particular case and the result which a temporary injunction would accomplish. A legal remedy may be adequate in one case, but not in another. Thus, *sequestration* would ordinarily be an adequate legal remedy to protect a party against the diversion of the rents of property which is in suit, since ordinarily the rents represent only so much money and the sequestration or the adverse party's bond affords security against loss of this money. But the fact that sequestration is ordinarily an adequate remedy in such a case does not necessarily mean that it will be an adequate remedy in every other case in which it may be available.

It is to be assumed, of course, that if the legal remedies of *damages* and *sequestration* are *adequate* according to the true intent and meaning of the rule of decision quoted from Sumner v. Crawford, the temporary injunction before us need not have been, and therefore ought not to have been issued. We have not held to the contrary. Defendants construe our judgment as they apparently construe that in Houston Oil Co. v. Village Mills Co., namely, as holding that an injunction may issue under Subdiv. 2, whether an adequate legal remedy exists or not; but such a point was not before us and our judgment only determined that the two legal remedies just mentioned are inadequate.

■ Was *damages* an adequate legal remedy? The proof shows a destruction of tangible property, that is, growing timber; we decline to regard the felling and removal of a person's timber, against his will, as anything else than a destruction of his property, regardless of how valuable the trespasser's product may be. As a consequence, there was an interference with plaintiffs' prosecution of their remedy and with the jurisdiction of the trial court to determine issues pending before said court for decision, namely, who owned the title to, and who had the right to possession of said timber; and the temporary injunc-

tion had the effect of stopping this destructive process and of preserving the trial court's jurisdiction over said issues. We have not been able to perceive how a legal remedy, when contrasted with the temporary injunction issued in this cause, can be held to be adequate unless it, too, will preserve the status quo ante and protect the trial court's jurisdiction. Obviously, liability in *damages* cannot be depended upon to accomplish that result; we have pointed out that the trial court was justified in assuming that defendants would continue to fell and to remove the timber unless stopped. Thus *damages* was not an adequate legal remedy. Defendants' insistence upon the adequacy of liability in damages as a legal remedy, when contrasted with the temporary injunction issued by the trial court, raises the question, Why have a procedure for determining the title to and the right to possession of growing timber if a defendant's ability to pay for the timber prevents the trial court from interfering with him? The court put the matter this way in Houston Oil Co. v. Village Mills Co.: "With the timber constituting the real subject-matter of the original suit, the claim of the defendant directly challenged in the way the law provides, and the suit not yet concluded, it is difficult to perceive how in justice the defendant was warranted in taking the timber to itself as though its ownership was undisputed. A legal action for property prosecuted in good faith would present a strange irony if the law permitted one of the parties during its pendency to destroy the property's value to the rival claimant by appropriating to himself that which made it valuable."

Was *sequestration* an adequate legal remedy? We think that the same criticism which was just made of the adequacy of *damages* must also be made of *sequestration*. We adhere to our conclusion that sequestration was inadequate, not only upon the ground stated in our previous opinion but also upon the ground that if defendants elect to replevy, a possibility to which the remedy subjects plaintiffs, sequestration ultimately subjects plaintiffs to the possibility of having to take *damages*

in lieu of the growing timber for which they now sue. It is not clear to us that defendants' liability in contract under a replevy bond would be greater than their maximum liability in tort for a conversion of timber pending suit; but we need not push this inquiry. Is the possibility mentioned one which must be disregarded? We think not, for our inquiry is, whether this legal remedy is "as practical and efficient to the ends of justice and its prompt administration as the remedy in equity"; and no reason appears why, with a remedy such as a temporary injunction available, the trial court should be subjected to the possibility of losing jurisdiction over pending issues and the plaintiffs should be subjected to the possibility of being deprived of the remedy which the law gives them for establishing their title to and right to possession of the tangible property they claim. The possibility mentioned is not, in fact, as remote as it may seem. Defendants have shown no justification whatever for their conduct; on this record they appear to be trespassers, yet as we have said several times before, the trial court was justified in assuming that defendants would continue to fell and remove plaintiffs' timber unless stopped. If, then, knowing what plaintiffs claim, and being parties defendant to plaintiffs' suit, and being able (as they say they are) to pay any judgment for damages which might be rendered against them, they persist in felling and removing the timber, they must be regarded as willing to assume the chance of having to pay a judgment against them for the manufactured value of the timber cut and removed by them; and it is therefore not unreasonable to suppose that they might also be willing to assume the chance of liability under a replevy bond and might persist in their conduct despite such a bond.

(7) There are other matters concerning *sequestration* to which we shall refer.

First: Defendants say: "The proof is that the defendants, through the defendant Rice, were in actual pedal possession of the property (as they of necessity had to be in order to physically cut and remove timber therefrom) whereas the possession of Plaintiffs was constructive only." The

record does not support this statement; the proof does not show that defendants were in possession of the land for which plaintiffs sued. The petition describes a rectangular tract, alleged to contain 200 acres; and the evidence concerning defendants' possession shows nothing beyond such momentary and temporary occupancy of such parts of this 200 acre tract as the process of felling and removing the timber required. No constructive possession by defendants was shown; for they proved no muniment of title. The extent of Rice's occupancy at any time was not shown, either; but it certainly cannot be said that Rice, and the defendants through him, were in possession of all or of most or of any considerable part of the 200 acres sued for. From the nature of the process of felling and removing timber, we are inclined to infer that Rice's occupancy at any one time covered only small fractions of the 200 acres.

The uncertainty respecting the extent of Rice's occupancy raises other questions concerning the adequacy and even the availability of *sequestration* but we prefer to put our judgment upon the grounds already mentioned.

Second: Sterling Mutual Life Insurance Co. v. Blume, Tex.Civ.App., 95 S.W.2d 1325, on which defendants so insist, is not in point. The temporary injunction before this court in that case was not granted to prevent the destruction of property or interference with the jurisdiction of the trial court; but was procured in order to oust the defendants and to enable the plaintiffs to take and to keep possession of the land for which they sued. The injunction, as did that in Hill v. Brown, reversed the status quo ante, instead of preserving it. This court held that sequestration was an adequate remedy to protect plaintiffs from a conversion by defendants of the "rents" of the land sued for; but the parties before us are not now disputing the right to "rents". This court did refer to plaintiffs' "allegations of trespass to try title", but we construe the reference as intended only to show the nature of the issue before the court, namely, title to the land, and thus, to the rents. Plaintiffs here raised a different issue.

Third: Defendants argue that the temporary injunction was, as to them, a harsh remedy. They say: "As the situation now stands, in the light of the action of the Court, we have the anomolous situation of a suit involving the question of title to real estate, as put in issue by Plaintiffs' petition in trespass to try title, by which the defendants are enjoined from cutting and removing timber pendente lite; but the plaintiffs are free of any such restraint and have not been required to post any bond for the protection of defendants in the event plaintiffs themselves should cut and remove the timber pendente lite and defendant should subsequently establish title to such timber. Under sequestration, which we earnestly contend was the proper remedy for plaintiffs to pursue, such a situation could not exist." The argument disregards the injunction bond which plaintiffs filed; and if there is any reason why defendants ought to be given greater protection against the plaintiffs than is afforded by this bond this record does not reveal it. On the face of the record the defendants are trespassers. There is nothing to show that plaintiffs will upset the status quo. Defendants have not questioned the sufficiency of the amount of the injunction bond except to complain that it is not as large as a sequestration bond. The point is hardly before us, but we think it proper to say that the trial court has power to protect defendants against a destruction of such interest as they may show themselves to have in the litigation of the issues pending between the parties.

The motion for rehearing is overruled.