**William E. HOOKS, Jr., Relator,**

v.

**FOURTH COURT OF APPEALS, Respondent.**

No. D–0147.

Supreme Court of Texas.

April 24, 1991.

Rehearing Overruled May 30, 1991.

William E. Hooks, Jr., San Antonio, for relator.

Edward G. Marion, Jr., James Michael Callan, San Antonio, for respondent.

## OPINION

GAMMAGE, Justice.

This original mandamus proceeding concerns how a statutory motion to dismiss a condemnation proceeding should be reviewed. Relator, William E. Hooks, Jr. seeks writ of mandamus directing the court of appeals to withdraw its own writ of mandamus. The court of appeals granted writ of mandamus in favor of All American Pipeline Company directing the trial court to grant All American's motion to dismiss a condemnation case. Because the court of appeals has circumvented the ordinary appellate process when there was an adequate remedy at law and issued the writ of mandamus when mandamus is not a proper remedy, we conditionally issue our writ of mandamus directing that the lower court's writ be withdrawn.

The underlying suit is one of many condemnation proceedings related to a transcontinental oil pipeline project. All American sought a pipeline easement across Hooks' ranch in Kimble County. All American first filed a mandatory injunction suit to require Hooks to allow it access to the property for a preliminary survey. Hooks ultimately gave verbal permission for the entry. In the process of the preliminary survey All American entered Hooks' property and cut down 23 trees along its proposed right-of-way.

In January of 1986, All American filed the condemnation action in Kimble County. The trial court appointed three commissioners to assess the value and set damages for the proposed taking. The commissioners on February 6, 1986, found the value of $56,171.15, and All American placed that amount in the registry of the trial court. All American also filed a surety bond, but did not file a cost bond, with respect to the award. On February 26, 1986, the trial judge signed an order reciting that All American had deposited the amount of the commissioners' award in the registry of court, and declaring "that Condemnee, WILLIAM E. HOOKS, JR., is entitled to withdraw this award if he so chooses." Before the federal court suits discussed below were even filed, Hooks withdrew the funds from the registry of court.

The proposed easement would have cut off Hooks' access to a part of his ranch. While the case was pending, Hooks used over $12,000 of the condemnation award funds to construct a road to access that part of his ranch.

On March 11, 1986, the State of Texas sued the United States Bureau of Land Management (BLM), its director, and All American in federal district court, claiming that such defendants had not complied with requisite statutory and regulatory procedures in connection with the pipeline project. The State asserted that the segment of the proposed pipeline in Texas from McCamey to the Gulf Coast had not been subjected to a proper Environmental Impact Statement as required by federal law. Shortly thereafter, the Texas counties of Travis, Hays and Gillespie filed a similar federal action alleging that the proposed "central" route for the pipeline through those counties had not been properly evaluated under environmental laws and should be enjoined. Both federal suits apparently sought injunctive relief.

To facilitate ultimate settlement of these suits, the respective parties (including All American) approved agreed orders which

were signed by the federal judge on May 15, 1986. The essence of the agreement was that, without admitting that the first environmental study was insufficient, the BLM and All American agreed to conduct a Supplemental Environmental Impact Statement ("SEIS") on the proposed McCamey to Gulf Coast route, and All American agreed to follow any alternative route acceptable to BLM based on the SEIS. The agreed order in the first federal suit enjoined All American from constructing the pipeline east of McCamey pending further order of the court, but expressly allowed it to conduct specific activities, including "Completion, including the option of dismissal, of pending condemnation proceedings, provided no new condemnation proceedings will be initiated." The agreed order in the second federal suit was consistent with the agreed order in the first. Despite the implicit suggestion in the federal suits that it dismiss all pending condemnation proceedings and later refile them only if the SEIS supported its first proposed route, All American took no action to dismiss the Kimble County condemnation suit for Hooks' property.

The hearings and related administrative proceedings on the SEIS took almost two years. The BLM issued its Record of Decision in February 1988, designating the so-called "Northern Alternative" as "environmentally preferable" and adding certain environmental stipulations for that northern route. The final SEIS supported the decision. On March 11, 1988, the federal judge signed an agreed order in the first federal case adopting the Northern Alternative as the route for the pipeline and abandoning the proposed route that would have crossed Hooks' ranch.

On May 25, 1988, over two months after conclusion of the federal suits, All American finally filed a motion in the Hooks condemnation suit seeking to dismiss the proceedings. All American's motion sought to require Hooks to return the $56,171.15 award less attorney's fees, appraiser's fees and certain other expenses, which it contended were the only costs and expenses that Hooks was entitled to keep under section 21.019 of the Texas Property Code and rule 162 of the Texas Rules of Civil Procedure. All American further asked the court to determine the reasonableness and necessity of the costs and expenses claimed by Hooks for which it was liable before it could obtain a dismissal pursuant to the statute.

Hooks responded with pleadings alleging that All American could not dismiss the condemnation suit because he had changed his position to his prejudice as a result of the proceedings. Hooks asserted he could not be returned to the status quo before the condemnation proceedings because All American had done substantial damage to the condemned property during its temporary possession by cutting down numerous oak and pecan trees and because he had built the alternative roadway for access to part of his property. Hooks further alleged that by posting the surety bond and depositing the award into the registry of court, All American took constructive possession. Hooks claimed that after All American had deposited the award in the registry of court and he had withdrawn the award, the condemning authority was estopped to dispute the condemnation and was limited to determination of the amount of compensation. Hooks further counterclaimed for certain additional damages alleged to have been caused by All American's conduct, including the attempt to dismiss the suit.

All American filed as a reply a pleading contesting jurisdiction of the counterclaim. It asserted that its motion to dismiss was tantamount to a nonsuit, that once the "nonsuit" had been filed the granting of it was "merely a ministerial act subject to the provisions of Section 21.019 of the Texas Property Code," and that Hooks had lost his right to counterclaim for additional damages, including the damages alleged to have been caused by the filing of the motion to dismiss. All American further filed special exceptions to the counterclaim pleadings, and answered with a general denial, numerous specific denials, and affirmative defenses. In particular, All American specifically attacked Hooks' claim for attorneys' fees, alleging part of

the fees were not reasonable or necessary and otherwise were not recoverable under section 21.019.

The trial court conducted an evidentiary hearing on the motion and responses. In addition to disagreements about applicable law, the parties presented conflicting evidence on numerous issues. The trial court did not issue formal findings of fact and conclusions of law, but in a letter to counsel for the parties dated April 7, 1989 stated as follows:

> The Court and Special Commissioners, in accordance with the law, assisted Plaintiff in each step in the speedy acquisition of Defendant's land against Defendant's wishes. The Defendant, from the acts of Plaintiff, reasonably concluded that his land was taken and that the fair value of the easement was his. To dismiss this proceeding would prejudice the Defendant.

On May 31, 1989, the trial judge signed an order that "Plaintiff's Motion to Dismiss and Return of Commissioners' Award be in all things denied." The order further recited that the court found against All American "and that this case should proceed to trial to determine the damages recoverable by Defendant according to law for the taking by Plaintiff."

All American then sought mandamus relief in the Fourth Court of Appeals, asserting that the trial judge had to grant its motion to dismiss. In an unpublished *per curiam* opinion, the court of appeals conditionally issued the writ of mandamus, directing the trial judge "to grant in all things the motion filed by All American Pipeline Company on May 25, 1988." Hooks then brought the present mandamus proceeding against the court of appeals for its mandamus order.

■ In an original mandamus proceeding, a court of appeals does not possess independent discretion to grant or deny mandamus against a trial court. Any discretion is vested in the trial court, and the question before this court is whether the court of appeals erred in granting the writ of mandamus. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917–18 (Tex.

1985). If the court of appeals erred, we will issue our writ of mandamus to correct the error.

■ It is true that in the ordinary case, absent special statutory provisions, a plaintiff has an absolute right to take a nonsuit. In the absence of a claim by a defendant for affirmative relief, a trial judge's refusal to grant the nonsuit violates a ministerial duty and should be corrected by mandamus. *Greenberg v. Brookshire*, 640 S.W.2d 870, 871 (Tex. 1982). But that rule does not apply to this case.

All American's motion, by its express terms, was not a motion for nonsuit. All American sought affirmative relief itself in the form of a return of the special commissioners' award already taken by Hooks. In this condemnation case, Hooks' existing motions and pleadings had sought at least the affirmative relief of claiming the award. All American's motion to dismiss the condemnation suit cited and was governed by an express statutory provision providing that the court "*shall make an allowance* to the property owner *for reasonable and necessary fees* for attorneys, appraisers, and photographers *and for the other expenses incurred by the property owner* to the date of the hearing." TEX. PROP.CODE ANN. § 21.019(b) (Vernon 1984) (emphasis supplied). The statutory procedure itself requires factual determinations on reasonableness and the existence of expense items. All American's motion is more properly described as a motion to dismiss pursuant to a special statutory provision.

■ Absent extraordinary circumstances not present here, a denial of a motion to dismiss or a plea in abatement is a ruling incident to the ordinary trial process which will *not* be corrected by mandamus, but by the legal remedy of the ordinary appellate process. *Abor v. Black*, 695 S.W.2d 564, 566–67 (Tex.1985); *Pope v. Ferguson*, 445 S.W.2d 950, 954 (Tex.1969), *cert. denied*, 397 U.S. 997, 90 S.Ct. 1138, 25 L.Ed.2d 405 (1970); *State ex rel. Pettit v. Thurmond*, 516 S.W.2d 119, 121 (Tex.1974).

The cost or delay of having to go through trial and the appellate process does *not* make the remedy at law inadequate, and hence mandamus will not lie. *Iley v. Hughes*, 158 Tex. 362, 367–68, 311 S.W.2d 648, 652 (1958). The court of appeals erred in allowing All American to use a mandamus proceeding to bypass the ordinary appellate process.

This case demonstrates the wisdom of this rule because fact issues are inherent in the condemnation dismissal process. An appellate court may not deal with disputed matters of fact in an original mandamus proceeding. *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 714 (Tex.1990); *Dikeman v. Snell*, 490 S.W.2d 183, 186–87 (Tex.1973). When the issues before the trial court necessarily require factual determinations, the court of appeals abuses its discretion when it resolves those issues in an original mandamus proceeding. *Brady*, 795 S.W.2d at 716.

Not only do the statutory dismissal provisions expressly require factual determinations, but our decisions suggest factual questions affect the right to dismiss condemnation actions. We have held that under certain factual circumstances the condemnor loses the right to dismiss a condemnation action. *See, e.g., City of Austin v. Capitol Livestock Auction Co.*, 453 S.W.2d 461 (Tex.1970); *Thompson v. Janes*, 151 Tex. 495, 251 S.W.2d 953 (1952); *Brazos River Conservation & Reclamation Dist. v. Allen*, 141 Tex. 208, 171 S.W.2d 842 (1943). The underlying facts must be established in the trial court and reviewed by appeal. The trial court should be allowed to resolve the factual disputes and then rule on whether the facts fall within an exception. We do not prejudge the case by speculating on the merits in this mandamus proceeding. Whether the court's failure to grant the dismissal was error should be addressed in the ordinary appellate process. The legal questions are best resolved through the normal appellate process, after the trial court has found facts from a properly developed evidentiary record. *Cobb v. Harrington*, 144 Tex. 360, 369–70, 190 S.W.2d 709, 713 (1945). To illustrate the factual and legal questions appropriate for appellate review, we briefly address the issues raised in this case.

■ A condemnor is entitled to dismiss a condemnation proceeding prior to taking possession of the property. *Thompson v. Janes*, 151 Tex. at 499, 251 S.W.2d at 954; *see* TEX.PROP.CODE ANN. § 21.019(a) (Vernon 1984). "There is no doubt that a condemnor who has not taken possession of the land sought to be condemned has the right to dismiss the suit if the project is to be abandoned or the location changed, for an agency clothed with the power of eminent domain may not be forced to take land against its will." *Thompson v. Janes*, 151 Tex. at 499, 251 S.W.2d at 954. In such circumstances, the condemnor's right of dismissal is fettered only by its obligation to reimburse the property owner for any "reasonable and necessary fees for attorneys, appraisers, and photographers and for the other expenses incurred by the property owner" before dismissal. TEX. PROP.CODE ANN. § 21.019(b) (Vernon 1984). After a condemnor takes possession of the property it may dismiss the condemnation proceeding only if the landowner is not prejudiced or harmed as a result. *Murray v. Devco, Ltd.*, 731 S.W.2d 555, 557 (Tex. 1987); *City of Austin v. Capitol Livestock Auction Co.*, 453 S.W.2d at 464–65; *Fort Worth Concrete Co. v. State*, 400 S.W.2d 314, 316 (Tex.1966); *Lower Nueces River Water Supply Dist. v. Cartwright*, 160 Tex. 239, 246, 328 S.W.2d 752, 757 (1959); *Thompson v. Janes*, 151 Tex. at 499–500, 251 S.W.2d at 955; *Brazos River Conservation*, 141 Tex. at 215, 171 S.W.2d at 844–45.

■ An issue in the case before us is whether the condemnor, All American, ever took possession of the easement it sought across Hooks' ranch, so that its right to dismiss the condemnation action is limited. A condemnor takes actual possession of property when it invades or appropriates the property. *Murray*, 731 S.W.2d at 557; *Brunson v. State*, 444 S.W.2d 598, 601 (Tex.1969). A condemnor takes constructive possession of property when it deposits the commissioners' award into the registry

of the court. *City of Fort Worth v. Corbin*, 504 S.W.2d 828, 830 (Tex.1974). It is undisputed that All American never took actual possession of the easement across Hooks' property. It is likewise undisputed that All American deposited the commissioners' award into the court registry and thereby gained the right to possess the property. Whether Hooks was prejudiced by All American's constructive taking is a factual matter which the trial court must resolve before All American's right to dismissal can be determined.

▮ Consistent with these principles, we conclude that a condemnor's right to dismiss a condemnation proceeding can be limited even if there was only a constructive taking of the property. It is possible that a landowner could be injured by a condemnor's right to possess the property, even if that right were never actually exercised. If the landowner cannot be restored to the position he enjoyed before the condemnation proceedings began, as for example by monetary compensation for his injury, the condemnor may be precluded from dismissing the action. Whether such is the case here remains to be seen.

Hooks contends he is entitled to retain the entire commissioners' award and to recover attorney's and appraiser's fees. His pleadings also seek recovery for damages resulting from All American's constructive possession of the land. Those damages include the loss of trees cut by All American to survey the proposed easement before it proceeded on its original condemnation petition, the expense of relocating a road on the property that would have interfered with the easement, and loss in market value caused "by the cloud of future condemnation which hangs over his property." The amount of damages claimed exceeds the commissioners' award. It is not clear whether Hooks contends that the award would compensate him for his damages, or whether he seeks damages in addition to the award. In no event, however, should Hooks recover more than his actual damages or the value of the property condemned, whichever is less, plus any costs to which he may be entitled.

We hold that the court of appeals erred in issuing the writ of mandamus because there is an adequate remedy at law by appeal and there are fact issues the trial court must resolve. We conditionally issue the writ of mandamus directing the court of appeals to withdraw its writ. We trust that the court of appeals and the parties at interest will use the ordinary appellate process to resolve their disputes, both factual and legal. The writ of mandamus will issue only if the court of appeals refuses to comply with this opinion.