In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-412 CV


____________________



IN RE DANIEL D. CLAYTON






Original Proceedings






MEMORANDUM OPINION


 Relator, Daniel D. Clayton, requests mandamus relief from three separate rulings by
the respondent/trial court judge, the Honorable Ronald L. Walker. The first ruling denied
relator's motion to compel discovery and came at the conclusion of a hearing conducted on
August 24, 2005. The second ruling involved the granting of real party in interest, Mutual
of New York's ("MONY"), plea in interpleader, dismissing it from the underlying litigation
with prejudice, and awarding it attorney's fees. The third ruling granted real party in interest,
Nancy L. Clayton's ("Nancy"), motion to transfer. The second and third rulings came at the
conclusion of a second hearing conducted by respondent on September 15, 2005. Relator
urges four bases for his mandamus relief, viz:

 1. The Trial Court abused its discretion in denying Relator's Motion to
Compel Discovery.


 2. The Trial Court abused its discretion by allowing a non-Movant and non-Respondent to dominate, control, dictate, and orchestrate the hearing on
Relator's Motion to Compel Discovery.


 3. The Trial Court abused its discretion in granting Defendant MONY's Plea
in Interpleader, dismissing all claims against Defendant MONY and rewarding
it with $4,225.00 directly from Relator's retirement funds as attorneys fees,
rewriting the annuity contract between Relator and MONY, and dismissing
MONY from this suit with prejudice.


 4. The Trial Court abused its discretion in granting Defendant NLC's [Nancy
L. Clayton's] Motion to Transfer this cause from the 60th Judicial District
Court to the 317th Judicial District Court of Jefferson County.


Because our recent memorandum opinion in Clayton v. Clayton, No. 09-05-517-CV, 2006
WL 302232 (Tex. App.--Beaumont Feb. 9, 2006, no pet. h.) (not designated for publication),
provides a detailed description of the procedural events surrounding the underlying litigation,
we will set out only such facts and circumstances from the record before us as is necessary
to analyze and decide the instant issues.

 Mandamus, as distinguished from an ordinary appeal, "is an 'extraordinary' remedy
that is 'available only in limited circumstances.'" CSR Ltd. v. Link, 925 S.W.2d 591, 596
(Tex. 1996) (quoting Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992)). "Mandamus is
appropriate 'only to correct a clear abuse of discretion or the violation of a duty imposed by
law when there is no other adequate remedy by law.'" Id. (quoting Johnson v. Fourth Court
of Appeals, 700 S.W.2d 916, 917 (Tex. 1985)). The party seeking relief must establish both
the absence of an adequate remedy by appeal and the trial court's abuse of discretion. See
In re Bay Area Citizens Against Lawsuit Abuse, 982 S.W.2d 371, 375 (Tex. 1998); CSR Ltd.,
925 S.W.2d at 596. A "court of appeals . . . acts in excess of its writ power . . . when it
grants mandamus relief absent these circumstances." Johnson, 700 S.W.2d at 917. As noted
in In re Bristol-Myers Squibb Co., 975 S.W.2d 601, 605 (Tex. 1998)(quoting Walker, 827
S.W.2d at 839):

 [I]n determining whether mandamus should issue, we cannot plumb the
subjective reasoning of the trial court. We must focus on the record that was
before the court and whether the decision was not only arbitrary but also
amounted "to a clear and prejudicial error of law."


 A trial court abuses its discretion if it acts in an "arbitrary or unreasonable" manner
"without reference to any guiding rules and principles." Downer v. Aquamarine Operators,
Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). There is no abuse of discretion, however, simply
because a trial court may decide a matter within its discretion differently than an appellate
court. Id. at 242. A relator challenging a trial court's ruling as an abuse of discretion labors
under a heavy burden. Johnson, 700 S.W.2d at 917. "The relator must establish, under the
circumstances of the case, that the facts and law permit the trial court to make but one
decision. This determination is essential because mandamus will not issue to control the
action of a lower court in a matter involving discretion." Id. (citing Pat Walker & Co. v.
Johnson, 623 S.W.2d 306, 308 (Tex. 1981)). 

 To determine if a clear abuse of discretion has occurred, we review the entire record. 
CSR Ltd., 925 S.W.2d at 599 (Baker, J., dissenting) (citing Morrow v. H.E.B., Inc., 714
S.W.2d 297 (Tex. 1986)). Additionally, "[a]n appellate court may not deal with disputed
factual matters in a mandamus proceeding." Id. (citing Hooks v. Fourth Court of Appeals,
808 S.W.2d 56, 60 (Tex. 1991)). "An abuse of discretion does not exist if the trial court
bases its decision on conflicting evidence and some evidence reasonably supports the trial
court's decision." Id. at 599-600 (citing Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978)). 

 We begin with the order granting MONY's plea in interpleader. On direct appeal, we
agreed with MONY that we lacked jurisdiction because none of the orders resolved all the
issues pending in the case. See Clayton, 2006 WL 302232, at *2. We noted that the order
of discharge is an interlocutory order that was made part of the case transferred to the 317th
District Court and, unless severed, the interlocutory order would eventually merge into the
final judgment in the case. Id. As all parties to relator's suit were transferred to another
court of the same jurisdiction, the transfer did not operate as a dismissal as the litigation
would continue in the transferee court. Id. Therefore, relator has an adequate remedy at law
by way of a motion to sever the discharge order involving MONY from the other defendants
and issues that remain pending in the transferee (317th) court. See Tex. R. Civ. P. 41; In re
Barrett, 149 S.W.3d 275, 280 (Tex. App.--Tyler 2004, no pet.). Once the discharge order
is severed from the remainder of the claims and parties, relator may then appeal the discharge
order entered by respondent. See Tex. R. App. P. 25.1, 26.1. Issue three is overruled.

 With regard to the grant of the motion to transfer, the transfer was not to just any
district court in Jefferson County, but to the court which rendered the final decree of divorce. 
The factual bases for relator's causes of action against Nancy and her divorce attorney,
Jeffery R. Shelton, appear to stem from acts or omissions by Nancy and Shelton while
attempting to comply with certain orders set out in the divorce decree. The decree awarded
relator, inter alia, the following: "H-8. Fifty percent of the community property portion of
wife's CSR Pension as set out in the qualified domestic relations order to be signed by the
court." At the August 24, 2005, hearing, Shelton attempted to explain the background facts
to respondent regarding relator's suit against Nancy as follows: 

 MR. SHELTON: The second part of the case deals with some checks
that Mrs. Clayton wrote to Mr. Clayton and the purpose of these checks is she
was following the terms of the divorce decree, which required that she send
her - - his half of the pension - - of her pension when she receives it until the -
- a QDRO took effect and - - and he was sent his checks directly. 

 If - - I think you can see on the - - in Mr. Clayton's petition that some
of the checks were over six months' old at the time that he cashed it. There
was an over - - I think the evidence will show that there was an oversight on
Mrs. Clayton's part. She thought the - - everything had cleared that account. 
She transferred the funds out of that account to another one. Of course, when
he cashed 'em then, there was insufficient funds or account closed . . . . 

 Anyway, Judge, there's - - there's - - there's several different angles,
I guess. There's - - I suppose he's trying to enforce the provision concerning
the division of Mrs. Clayton's pension. He's also pursuing a - - potentially a
clarification of what the rights are as to the Mutual of New York annuity. He
may be potentially trying to enforce his rights as to the motion - - the - - the
motion to enforce his rights to the Mutual of New York annuity. 

 And last, but not least, there was some implication, but not in writing
or in the pleadings, at the last hearing in front of Judge Sanderson, that he felt
like there was some concealed assets. So, potentially there's a claim in the
works on his part that there was undivided assets.


 . . . .


 The motion that - - that I haven't been able - - that no one's been given
notice of yet but I guess will be in the future - - and I suppose you'll be hearing
it - - is the motion to transfer to the 317th. The reason - - the basis for that, of
course, is, in the Family Code, I believe in Chapter 9, it talks about that the
Court that rendered the divorce has the jurisdiction over enforcement,
clarification, and dividing un - - any undivided assets. 


 Relator argues that the underlying action is "an independent suit not related or
arising from the divorce decree," and further contends that his "fraud" cause of action against
Nancy is "based on her issuance of 'HOT' checks. These monies and debt are not
community funds!" (emphasis relator's) However, in his petition for writ of mandamus,
relator describes his need for the discovery of Nancy's bank and other financial records in
the following manner: 

 In production request No. 1, Relator requested production of [Nancy's]
banking, credit union, savings, and checking records from March 5, 2002
through the date of the request. The information sought in production request
No. 1 relates directly to the Relator's entitlement to part of [Nancy's]
retirement benefits pursuant to the Court's Order (Appendix 13) assigning a
portion of the benefits payable under the Civil Service Retirement System
("CSRS") to Relator, since it concerns the amount and date of receipt of such
benefits by NLC. See Paragraph 13 of the Domestic Relations Order prepared
by her counsel (Appendix 13) which provides, to wit:


 "13. While it is anticipated that the CSRS will pay benefits
directly to Former Spouse (Relator), Member [Nancy] is
designated a constructive trustee to the extent Member receives
any retirement benefits that are due to be paid to Former Spouse. 
In the event Member receives any benefits that are due to be
paid to the Former Spouse, Member is ORDERED to pay
Former Spouse's benefits to Former Spouse within three (3)
business days of receipt by Member." Emphasis supplied.


 [Nancy] tendered checks that were returned because of insufficient
funds or No Account (attached to Plaintiff's Original Petition; Appendix 1,
Exhibit B); nevertheless, SHELTON testified in open court that [Nancy] paid
Relator for the amount covered by those dishonored checks. (Appendix 8, p.
15, l. 9-13). Though SHELTON's testimony was vigorously disputed by
Relator (Appendix 8, p. 17, l. 9-11), the court ruled in [Nancy's] favor and
denied his motion to compel. The amounts of the deposit, the date of the
deposits, the date the checks were written to Relator from those accounts, the
date of closure of those accounts and the current status of the account, all have
a tremendous and material bearing on Relator's claims. . . . Specifically,
Relator is entitled to know the amount of retirement benefits received by
[Nancy] and the date [Nancy] received the monies which in turn triggered her
obligation to pay Relator within three (3) business days of receipt. (See
Appendix 13, p. 2). The denial of this discovery prevented Relator from
preparing and presenting his case.


 Further along in his petition, relator argues the importance of mandamus relief in his
suit against Nancy: 

 Relator is entitled to the relief requested because the requested
discovery is relevant and material to the issues and "goes to the heart of his
case". [sic] Relator has established a substantial interest in [Nancy's]
retirement benefits, and Relator is clearly entitled to determine the amount of
funds and/or adjustments, if any, received by [Nancy], the dates on which they
were received, and whether [Nancy] made a false material representation
regarding the availability of those funds in her account and other matters,
knowing she did not have the funds when she tendered those checks to Relator. 
Relator is also entitled to these data in order to verify and dispute SHELTON's
sworn testimony. 


 Relator was supplied by [Nancy] with insufficient fund checks or closed
account checks; while SHELTON testified under oath that Relator had been
paid. The amounts of the deposit, the date of the deposits, the date the checks
were written to Relator from those accounts, the date of closure of those
accounts and the current status of the account, all have a tremendous and
material bearing on Relator's claims of both breach of contract and fraud.
(emphasis relator's)


 While relator is insistent that the underlying causes of action are "independent" and
"DO NOT relate in any way to the divorce litigation between Relator and [Nancy]," we are
unable to recognize any real distinction. Regardless of that fact, the record before us
indicates that sometime around August 15, 2005, relator filed a "Second Amended Petition
For Enforcement By Contempt" in the 317th District Court of Jefferson County. In his
enforcement petition, relator alleges Nancy failed to make numerous monthly payments to
him for his share of Nancy's CSR Pension, as ordered in the divorce decree. Along with the
enforcement provisions in Chapter 9 of the Texas Family Code, Chapter 157 also permits the
filing of a motion for enforcement to enforce "other provisions of a final order." See Tex.
Fam. Code Ann. §157.001(a) (Vernon 2002). Section 157.003 of the Texas Family Code
is titled "Joinder of Claims and Remedies; No Election of Remedies," and contains the
following provisions:

 (a) A party requesting enforcement may join in the same proceeding any claim
and remedy provided for in this chapter, other provisions of this title, or other
rules of law.

 (b) A motion for enforcement does not constitute an election of remedies that
limits or precludes:

 (1) the use of any other civil or criminal proceeding to enforce
a final order; or 

 (2) a suit for damages under Chapter 42.


Tex. Fam. Code Ann. §157.003(a)-(b)(2)(Vernon 2002).


 It appears relator filed his enforcement action in the 317th District Court prior to the
issuance of any of the orders complained of by relator in this mandamus proceeding. As
section 157.003 provides for relator to join in his enforcement suit "any claim and remedy
provided for in . . . other rules of law," we cannot find that the transfer of the underlying suit
by respondent was an arbitrary or unreasonable act or an act done without reference to any
guiding rules or principles. See Downer, 701 S.W.2d at 241-42. The 317th District Court
will provide an adequate forum for relator to litigate any and all of his various causes of
action against the defendants. 

 In the instant case, we observe without deciding that none of relator's causes of action
against Shelton appear to allege acts or omissions independent of Shelton's representation
of Nancy in the prior divorce proceeding. At any rate, relator will be able to pursue his
causes of action in the 317th District Court as per section 157.003, and can take comfort in
the knowledge that the court that renders the decree of divorce retains the power to enforce
the property division as provided by Chapter 7 of the Family Code. See Tex. Fam. Code
Ann. § 9.002 (Vernon 1998). Additionally, should a QDRO need clarification or
amendment, the 317th District Court retains continuing, exclusive jurisdiction to make such
adjustments. See Tex. Fam. Code Ann. § 9.101(a) (Vernon 1998), § 9.1045 (Vernon Supp.
2005). It was within respondent's complete discretion to make the transfer as there is
statutory support for such a ruling.

 In light of all of the above, we can find no clear abuse of discretion by respondent in
transferring relator's action originally filed in the 60th District Court of Jefferson County,
in Trial Cause No. B-174,198, to the 317th District Court, which is the court that rendered
the Claytons' divorce decree and did render, or will render or clarify, any qualified domestic
relations orders involving payments from pension or retirement plans divisible between the
Claytons. The additional problem of a large number of disputed factual issues makes
mandamus relief inappropriate. See CSR Ltd., 925 S.W.2d at 599. Relator has an adequate
legal forum in the 317th District Court to litigate his various causes of action and the record
does not indicate how any irreparable harm could occur from the transfer. Lastly, if relator
is contending marital assets were somehow concealed by Nancy during the divorce action,
that claim would be more properly dealt with in the 317th District Court. See Tex. Fam.
Code Ann. §§ 9.201 - .205 (Vernon 1998). We therefore overrule relator's fourth issue, as
well as his first issue as he will be entitled to any relevant items of discovery necessary to
litigate his various causes of action once the myriad factual disputes are resolved by the trial
court. We decline to address relator's second issue as it fails to present a cognizable issue
for mandamus relief. We deny relator's petition for writ of mandamus as well as relator's
first supplemental petition for writ of mandamus. 

 WRITS DENIED.

 PER CURIAM

Submitted December 21, 2005

Opinion Delivered April 20, 2006


Before McKeithen, C.J., Kreger and Horton, JJ.