**Motion denied; Reversed in Part and Remanded, and Memorandum Opinion filed December 21, 2018.**



In the

# Fourteenth Court of Appeals

### NO. 14-17-00681-CV

### GILCHRIST COMMUNITY ASSOCIATION, Appellant

### v.

### COUNTY OF GALVESTON, TEXAS, Appellee

**On Appeal from the County Court at Law No 2
Galveston County, Texas
Trial Court Cause No. CV-0076026**

## M E M O R A N D U M   O P I N I O N

This appeal involves a condemnation suit brought by Galveston County against the Gulf Coast Rod, Reel and Gun Club (the Club) and Gilchrist Community Association (GCA). GCA challenges the trial court's judgment in two issues. First, GCA contends the trial court erred by concluding it lacked standing. Second, GCA contends the trial court erred in granting summary judgment in favor of Galveston County because Galveston County lacked statutory authority to

condemn the property. The Club does not itself appeal the trial court's judgment but has submitted a brief challenging GCA's appeal. Galveston County moves to dismiss GCA's appeal for lack of standing. We deny the motion, reverse in part, and remand.

## I. BACKGROUND

Rollover Pass is a piece of property on Bolivar Peninsula. In March 2016, Galveston County filed a petition in condemnation seeking to condemn the property. At the time Galveston County filed suit and for many years prior, the Club owned the property while GCA managed and maintained it. In its petition, Galveston County named the Club as the owner of the property. GCA filed a notice of appearance in the suit, claiming to be a tenant of the property.

The trial court appointed special commissioners, and GCA appeared at the special commissioners' hearing on the condemnation. At the conclusion of the proceeding, the special commissioners awarded the Club $1,600,000 for the property. The special commissioners made no award to GCA. GCA objected.

After GCA's objection, on August 16, 2016, Galveston County amended its petition to include GCA as a defendant. The petition described GCA as "an entity which either owns, possesses, or claims some interest in title to the land described[.]"

On August 24, 2016, Galveston County deposited the amount awarded by the special commissioners into the court's registry.

On March 21, 2017, Galveston County filed a motion for summary judgment regarding its right to take. In a footnote, Galveston County noted that it disputed GCA's claim to any ownership interest in the property. Both the Club and GCA responded to the motion for summary judgment. On April 19, 2017, the trial court

2

granted partial summary judgment on Galveston County's right to take and granted possession to Galveston County.[1] The value of the property had yet to be determined.

Subsequently, Galveston County filed a Motion to Require Proof of Standing or, Alternatively, to Preclude the Offer of Evidence ("Motion to Require Proof of Standing"). In the motion, Galveston County argued that GCA lacked standing to seek affirmative relief, or alternatively, should be precluded from offering evidence at trial. Galveston County asserted that GCA lacked standing because GCA had "no personal stake in the litigation at the time the condemnation was filed." In its reply in support of its motion, Galveston County prayed for the trial court to "dismiss the GCA as a party" after "find[ing] the GCA lacks standing." On July 21, 2017, the trial court signed an order granting the motion "in all respects," ordering that GCA "lacks standing in this cause, and in the event of trial, shall be precluded from offering evidence of any kind."

On July 26, 2017, Galveston County and the Club entered into an agreed final judgment in which the court found Galveston County was entitled to condemn the property and the Club should be awarded $1,750,000 as compensation. In addition to awarding condemnation to the County and the settlement payment to the Club, the amended agreed final judgment stated that GCA was not entitled to any compensation for the taking of Rollover Pass because of the trial court's finding that GCA lacked standing:

> IT IS FURTHER ORDERED that, in light of this Court's ruling on July ___, 2017 (sic), granting Petitioner's Motion and Supplemental

---

[1] GCA filed a notice of appeal on April 25, 2017, seeking to appeal the trial court's partial summary judgment. This court docketed the appeal as cause number 14-17-00348-CV, but later dismissed the appeal because the partial summary judgment was unappealable as an interlocutory order.

Motion to Require Proof of Standing or, Alternatively, to Preclude the Offer of Evidence, and finding Defendant, Gilchrist Community Association, to lack standing in this proceeding, any claim by Defendant, Gilchrist Community Association, for adequate compensation for the taking in this proceeding; reasonable and necessary fees for attorneys, appraisers, experts, or other expenses; or any other request for affirmative or monetary relief of any kind is DENIED.

This appeal followed.

## II. ANALYSIS

GCA argues that the trial court erred in holding that GCA lacked standing. GCA also argues that the trial court erred by granting summary judgment on Galveston County's right to take because Galveston County's "declared purpose of building a park was a subterfuge for assisting the [General Land Office of Texas] in closing Rollover Pass." Galveston County moves to dismiss the appeal contending this court lacks jurisdiction because GCA lacks standing to bring the appeal.

### A. Standing to appeal

As a threshold issue, we must determine the matter of this court's jurisdiction. Galveston County's motion to dismiss GCA's appeal asserts that GCA has no standing to appeal because GCA does not have an ownership interest in the property at issue. This argument is without merit.

Generally, a named party to the suit can bring an appeal. *See City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 754 (Tex. 2003). To appeal an alleged error, a party must show that the error injuriously affects it. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000). Contrary to Galveston County's assertion, ownership of property is not required to make this showing in a case involving property. *Id.* at 844 ("We held that Bi-Ed could

4

appeal despite the fact that it asserted no ownership interest in the property, reasoning that it had a 'justicable interest' in pursuing the case. . . . This is in accord with our well-established rule that, to appeal an alleged error, a party must show that the error injuriously affects it."); *Bi-Ed Ltd. v. Ramsey*, 935 S.W.2d 122, 123 (Tex. 1996) (plaintiff had standing to appeal judgment against it in action against city and owner of adjacent property for alleged wrongful obstruction of access to road on adjacent property, since trial court's judgment refused to grant any of relief sought by plaintiff).

Galveston County's contention that GCA has no standing to appeal because GCA does not have an interest in the property is one of the very issues that GCA appeals. To support its argument that the trial court erred by granting Galveston County's Motion to Require Proof of Standing, GCA argues that it has a justiciable interest in the property. This court has jurisdiction to review questions of standing and jurisdiction. *State v. Naylor*, 466 S.W.3d 783, 787 (Tex. 2015) ("We always have jurisdiction to resolve questions of standing and jurisdiction."). Because GCA is a named defendant in the underlying suit and because GCA appeals the trial court's standing determination against it, we reject Galveston County's argument that GCA has no standing to appeal.[2] We deny Galveston County's motion to dismiss and proceed to address the merits of GCA's appeal.

## B. Standing before the trial court

---

[2] We are likewise unpersuaded by the arguments of the Club and Galveston County that GCA lacks standing because the Club withdrew the condemnation award from the registry of the trial court. *Tejas Gas Corp. v. Herrin*, as well as other cases the Club and Galveston County cited in support of this proposition, states the principle that after the landowner has withdrawn an award from the registry of the court or advocated for its withdrawal, he cannot thereafter contest the taking. *See, e.g.*, 716 S.W.2d 45, 45–46 (Tex. 1986). Courts have reasoned that the withdrawal or advocacy for withdrawal effectively constitutes consent to the taking. *See, e.g.*, *id.* GCA neither withdrew any money from the registry nor advocated for the Club to withdraw the money. Therefore, *Tejas* and its progeny are inapposite.

GCA makes several arguments in support of its contention that the trial court erred by granting Galveston County's Motion to Require Proof of Standing.[3] Because of the unique posture of this case, we need not reach most of the arguments raised by GCA.

Standing is implicit in the concept of subject-matter jurisdiction, and subject-matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993).

We review standing under the same standard by which we review subject-matter jurisdiction generally. *Id.* at 446. Whether the trial court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

The question of standing applies to a plaintiff or a party seeking affirmative relief. The standing inquiry "focuses on the question of who may bring an action." *Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015) (quotation omitted); *see Lazarides v. Farris*, 367 S.W.3d 788, 796–97 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (same); *see also Lewis v. Aurora Loan Servs.*, No. 01-15-00362-CV, 2016 WL 887176, *3 (Tex. App.—Houston [1st Dist.] Mar. 8, 2016, no pet.) (mem. op.) ("The defendants are not the plaintiffs in this case.

---

[3] First, GCA argues that it had a justiciable interest in the condemnation of Rollover Pass because before the condemnation suit commenced, it had "provided supervision over the property." Second, GCA states that many of its members "had property or livelihoods which depended, in some degree, on the continuing success of Rollover Pass as a public attraction." Third, GCA suggests that it may have associational standing as a "public interest group." Fourth, GCA argues that Galveston County's standing argument is precluded by estoppel. GCA complains that Galveston County raised its standing argument "after the GCA had participated in the litigation for about a year, with the tacit approval of the County." GCA points out that in Galveston County's First Amended Petition, the County identified the GCA as a defendant. Finally, GCA asserts standing as a leaseholder of a Rollover Pass.

Lewis is.  Thus, the issue is not whether defendants have standing to maintain this action.").

Condemnation of private property involves a two-part process prescribed in sections 21.012 through 21.016 of the Texas Property Code.  Tex. Prop. Code Ann. § 21.011 (West 2018).  During the first phase, the party seeking condemnation initiates an administrative proceeding by filing a petition for condemnation in the trial court.  Tex. Prop. Code Ann. § 21.012 (West 2018); *Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 179 (Tex. 2004); *Amason v. Nat. Gas Pipeline Co.*, 682 S.W.2d 240, 241 (Tex. 1984).  Once a petition is filed, the trial court appoints three disinterested individuals as special commissioners to assess the damages.  Tex. Prop. Code Ann. § 21.014 (West 2018).  The special commissioners conduct a hearing to determine the amount of damages.  Tex. Prop. Code Ann. § 21.015 (West 2018).  If either party files objections to the special commissioners' award,[4] "the . . . award is vacated and the administrative proceeding converts into a normal pending cause in the court with the condemnor as plaintiff and the condemnee as defendant."  *Amason*, 682 S.W.2d at 242.  In the judicial proceeding, the burden of proof regarding the right to take is generally on

[4] Only "owners" are entitled to share in condemnation award.  *See* Tex. Prop. Code Ann. § 21.042 (West 2018) (referring to property owners as those entitled to compensation). However, the term "owner" is broadly defined in the eminent domain context.  The term "owner," as used in the statutes governing eminent domain, embraces not only the owner but also a tenant for life, a lessee for years, and any other person who has an interest in the property that will be affected by the condemnation.  *Houston North Shore Ry. Co. v. Tyrrell*, 98 S.W.2d 786, 793 (Tex. 1936) ("The term 'owner' as used in condemnation statutes, embraces not only the owner of the fee but a tenant for life, a lessee for years, and any other person who has an interest in the property that will be affected by the condemnation."); *see Elliott v. Joseph*, 351 S.W.2d 879, 884 (Tex. 1961) ("The term 'owner' in this sense includes a lessee for years as well as any other person who has an interest in the property."); *State v. Fiesta Mart, Inc.*, 233 S.W.3d 50, 55 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("Unless a contrary provision exists in the lease agreement, a lessee is entitled, as a matter of law, to share in a condemnation award when part of its leasehold interest is lost by condemnation.")

the condemnor, while the burden to prove the value of condemned property is on the condemnee. *Religious of Sacred Heart of Tex. v. City of Houston*, 836 S.W.2d 606, 613 (Tex. 1992).

We conclude that because GCA is the defendant in this condemnation cause of action, GCA is not required to establish standing. As the plaintiff, condemnor Galveston County, not the defendant condemnee GCA, sought affirmative relief in the court below. Galveston County amended its petition to add GCA as a defendant, and Galveston County asserts that GCA is bound by the trial court's resulting judgment that GCA has no leasehold interest in the property and is not entitled to compensation. Thus, there was a real controversy between Galveston County and GCA regarding whether GCA had a compensable interest in the property, and that controversy was actually determined by the relief Galveston County sought and obtained from the trial court. *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005) (explaining these two requirements for standing). GCA did not intervene in the suit or file any counterclaim. Other than a motion for new trial, GCA did not file any motion for affirmative relief.

Galveston County argues, "when a condemnation case reaches the compensation stage, a party nominally called a Defendant becomes more like a Plaintiff." We disagree that this observation affects the standing analysis. As a condemnee, GCA filed objections to the special commissioners' award and GCA had the burden to prove the amount of adequate compensation for the taking. *Religious of Sacred Heart of Tex.*, 836 S.W.2d at 613. However, neither its objections nor the shifted burden converted GCA into a plaintiff. *See Collin Cty. v. Hixon Family P'ship, Ltd.*, 365 S.W.3d 860, 866–68 (Tex. App.—Dallas 2012, pet. denied) (holding neither objections nor shifting of burden to prove adequate compensation causes condemnee to become plaintiff in trial court) (citing *Denton*

*Cty. v. Brammer*, 361 S.W.2d 198, 200 (Tex. 1962)); *see also Duncan v. Calhoun Cty. Navigation Dist.*, 28 S.W.3d 707, 709 (Tex. App.—Corpus Christi 2000, pet. denied) (holding that issues of "right to take" and "just compensation" are components of single, indivisible condemnation cause of action). If GCA failed to carry its burden to prove it had a compensable leasehold interest, the consequence would be a binding judgment that GCA is not entitled to compensation from Galveston County, not a dismissal of Galveston County's suit against GCA for lack of subject-matter jurisdiction. Galveston County cannot have it both ways.

Moreover, even if GCA could be analogized to a plaintiff, its failure to prove entitlement to compensation would not deprive the court of subject-matter jurisdiction. *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76–77 (Tex. 2000) ("'The right of a plaintiff to maintain a suit, while frequently treated as going to the question of jurisdiction, has been said to go in reality to the right of the plaintiff to relief rather than to the jurisdiction of the court to afford it.'" (quoting 21 C.J.S. Courts § 16, at 23 (1990))); *Mitchell v. Turbine Res. Unlimited, Inc.*, 523 S.W.3d 189, 197 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (holding that whether property belongs to party is question going to merits of court's order, not court's jurisdiction). For these reasons, the trial court erred by determining that GCA lacked standing.

Galveston County points to the decision of this court in *Mayberry v. Kinder Morgan Crude & Condensate*, LLC, No. 14-16-00523-CV, 2018 WL 456709 (Tex. App.—Houston [14th Dist.] Jan. 18, 2018, pet. denied) (mem. op.), as a case where this court determined that a condemnee lacked standing. In *Mayberry*, Mayberry himself (the condemnee) asserted in trial court filings that he had no interest in the property being condemned. *Id.* at *2–3. Mayberry also asserted in various trial court filings that the court lacked jurisdiction to hear the case because he was the

"wrong defendant." *Id.* at *3. As such, Mayberry judicially admitted he was not a proper party to the case. Nonetheless, the case was called to trial and Mayberry was permitted to testify regarding his ownership interest in the property at issue before a determination was made with respect to his "standing." *Id.* The trial court signed a final judgment only after hearing evidence at trial. The judgment stated that Mayberry failed to meet his burden to prove that he had an ownership interest in the property. *Id.* Although this court ultimately held that Mayberry lacked "standing" because he had no compensable interest in the property at issue, the holding was based on Mayberry's judicial admissions and his failure at trial to establish any ownership interest in the property. *Id.* at *4–5; *see also id.* at *1 ("Because we conclude that Mayberry lacks an ownership interest in the condemned property, we affirm the trial court's judgment."). As such, *Mayberry* does not properly support Galveston County's assertion that a condemnee has the burden to establish standing, much less that its failure to do so deprives the court of subject-matter jurisdiction yet does not prevent the court from issuing a judgment binding the condemnee. We decline to extend *Mayberry* to support such holdings, which would be contrary to the decisions cited above.

Even if a condemnor could properly assert a condemnee lacks standing to participate in a condemnation suit initiated by the condemnor, a condemnor's right to dismiss a condemnation proceeding is generally limited after the condemnor has taken possession of the property. *Hooks v. Fourth Court of Appeals*, 808 S.W.2d 56, 60 (Tex. 1991). After a condemnor takes constructive or actual possession of a property, the condemnor may dismiss the condemnation proceeding only if the owner is not prejudiced or harmed as a result. *Id.* at 60–61; *see Fort Worth Concrete Co. v. State*, 400 S.W.2d 314, 315–17 (Tex. 1966) (rejecting request for dismissal of party based argument that party had no interest in land sought to be

condemned where condemnor had already taken possession); *see also Mount Vernon United Methodist Church v. Harris Cty.*, No. 14-16-00590-CV, 2017 WL 1512251, *2 (Tex. App.—Houston [14th Dist.] Apr. 25, 2017) (mem. op.) (quoting *Fort Worth Concrete*, 400 S.W.2d at 317, and applying its principles to a lienholder).

Here, it is undisputed that Galveston County deposited the commissioner's award into the court registry and thereby gained constructive possession of the property. *See Hooks*, 808 S.W.2d at 61. Whether GCA was prejudiced by Galveston County's constructive taking is a factual matter the trial court did not address. *See id.* For this reason and because GCA is not the plaintiff in this action and seeks no affirmative relief other than the "just compensation" that is part and parcel of Galveston County's condemnation cause of action, the trial court erred by granting Galveston County's Motion to Require Proof of Standing. We sustain GCA's first issue.

## C.    Summary judgment on right to take

GCA's second issue challenges the trial court's ruling on Galveston County's motion for partial summary judgment on the "right to take." Analysis of this issue is premature. Galveston County argues GCA waived the issue "because it was never raised in response to the County's summary judgment motion on the right to take." However, the motion for partial summary judgment was not clearly asserted against GCA.

At oral argument, counsel for Galveston County took the position that the motion was asserted against both defendants. In its partial motion for summary judgment on the "right to take," however, Galveston County took the position that GCA had no ownership interest in the property. In a few instances in the motion, Galveston County referred to "Defendants," plural, but the motion was based on

11

the *landowner's* inability to show fraud, bad faith, or arbitrary and capricious acts, and Galveston County did not acknowledge, or even argue in the alternative, that GCA was a landowner. Instead, Galveston County relied upon its Motion to Require Proof of Standing to eliminate GCA from the case. Although GCA joined the Club's response to the partial motion and other related briefing, it is not clear that the trial court ruled on Galveston County's right to take the property from GCA.

We conclude that in this circumstance, the appropriate course is to remand the case to the trial court for further proceedings. *See Associated Air Ctr. v. Tary Network Ltd.*, No. 05-13-00685-CV, 2015 WL 970664, at *7 (Tex. App.—Dallas Mar. 4, 2015, no pet.) (mem. op.) ("As long as there is a probability a case has for any reason not been fully developed, an appellate court has the discretion to remand rather than render a decision."); *see also United States Fire Ins. Co. v. Carter*, 473 S.W.2d 2, 3 (Tex. 1971) (holding remand is appropriate when a case, for any reason, has not been fully developed); *Scott Bader, Inc. v. Sandstone Prods., Inc.*, 248 S.W.3d 802, 822 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (same); *De Monet v. PERA*, 877 S.W.2d 352, 361 (Tex. App.—Dallas 1994, no writ) ("Addressing . . . independent grounds not considered by the trial court usurps the trial court's authority to evaluate and rule on issues before it and denies the appellate court the benefit of the trial court's decision.").

On remand, Galveston County will have a full and fair opportunity to assert its claims regarding GCA's ownership interests, or lack thereof, on summary judgment and, if necessary, its right to take with respect to GCA. We think this result best comports with the interest of justice. *See* Tex. R. App. P. 43.3(b).

### III. CONCLUSION

We reverse the trial court's order granting Galveston County's Motion to Require Proof of Standing and reverse its judgment as to GCA. We remand the case to the trial court for further proceedings.

/s/    Marc W. Brown
         Justice

Panel consists of Justices Jamison, Busby, and Brown.